No. 34,303

The State of Kansas, *Appellee*, v. Frank Bechtelheimer, *Appellant.*

(100 P. 2d 657)

Opinion filed April 6, 1940.

*Elisha Scott, Charles. Rooney, John W.. Lewis* and *Fred Rooney,* all of Topeka, for the appellant.

*Jay S. Parker,* attorney general, *A. B.. Mitchell,.* assistant attorney general, and *Lawrence. J. Richardson,* special prosecutor, for the appellee; *Walter T. Chaney,* of Topeka, of counsel.

The opinion of the court was delivered by

Allen, J.: The defendant was convicted of violating the worthless-check statute (G. S. 1935, 21-554) and appeals.

The defendant was in the beer business in Topeka and carried an account in the Guaranty State. Bank as the "Kingsbury Beverage Company, Frank Bechtelheimer." On July 5, 1937, a check on this bank, signed by .defendant, payable to the Star Peerless Brewing Company in the sum of $675, was delivered to the agent of the payee in payment of a carload of beer. The record contains the following stipulation: .

"It is admitted by the defendant, Frank. Bechtelheimer, that he signed the check on which this prosecution is based, having been drawn on the Guaranty State Bank of Topeka, Kansas, in the sum of $675. That the check was offered in evidence at the preliminary hearing of this case and the same bore a notation on its face, 'insufficient funds.' That since the preliminary hearing of this case, the check has been misplaced or lost. That a true copy of the check is set out in the information."

There was evidence that defendant did not have on deposit in the Guaranty bank funds with which to pay such check.

Appellant contends the trial court erred in refusing to permit Elisha Scott to testify for defendant.

Elisha Scott appeared as counsel in the first trial in which the jury failed to agree. At that trial Scott offered to testify in behalf of the defendant. The state objected to such testimony and the objection was sustained. At the second trial Scott again appeared as counsel for defendant and again offered to testify on behalf of his client. The following colloquy appears in the record:

"(Attorney for appellee): If the court please, this same question was up before. Mr. Scott appeared as counsel for Mr. Bechtelheimer and knew what the testimony would be, and now he wants to go on the witness stand as a witness. With a little time, I think I can cite authorities.

"The Court: I know what the supreme court has held about it.

"(Attorney for Appellant): That is in civil cases.

"The Court: There is no distinction. The rule is if you appear as an attorney in the case, and also as a witness, you withdraw as an attorney. The supreme court has laid that down flat, and there is a very good reason for that rule, as you can see and everybody can see. I am simply checking it up to you.

"(Attorney for Appellant): I offer to give testimony in this case, not saying what it is, but what I know happened during that time, and I think that justice in the case should permit the court to let me testify, for that decision that our supreme court passed on was in a civil case. I don't know of any such decision in a criminal case, where a man's liberty is at stake.

"The Court: I know of no distinction between civil and criminal cases. If you are a material witness, you should have thought of that.

"(Attorney for Appellant): I don't know how material I am. I want to tell what actually happened to this jury. I may not be material.

"The Court: I think I will hold to the rule. You admit you knew the rule, and you should have thought of it.

"Objection sustained.

"(Attorney for Appellant): Let the record show that I offer to testify, and that is all."

In *State v. Ryan*, 137 Kan. 733, 22 P. 2d 418, the county attorney testified as to a statement the defendant made to him. It was ruled as stated in the syllabus:

"Where it is necessary for the counsel in a case to testify on some material disputed point that has a material bearing on the guilt or innocence of the defendant in a criminal case or one that involves a serious dispute of fact in a civil case, he should withdraw as counsel in the case."

The question of the competency of an attorney to testify on behalf of his client has been before this court in a number of cases.

In *C. B. U. P. Rld. Co. v. Andrews*, 41 Kan. 370, 21 Pac. 276, it was held that an attorney was a competent witness, although his compensation was contingent on the result of the litigation.

In *State v. Herbert*, 63 Kan. 516, 66 Pac. 235, one Caldwell, an

attorney who had represented the defendant at a former trial, was permitted to testify in regard to statements made to him by the defendant. The court held that under the circumstances the communications were not privileged. The question of competency of the witness was not discussed.

For recent expressions of this court on the question, see *Earhart v. Tretbar*, 148 Kan. 42, 80 P. 2d 4; *Protheroe v. Davies*, 149 Kan. 720, 89 P. 2d 890.

In 4 Wigmore on Evidence (2d ed.), section 1911, after a review of the authorities, the author states that the courts have declined, almost unanimously, to lay down a rule of prohibition. "The reasons are, probably, because the expected evil is one that would be caused only by an inveterate practice and not by casual instances, and because the strong recommendations of the courts have proved sufficient to prevent the use of such testimony other than in casual, unavoidable, and therefore harmless instances." (p. 95)

In the trial of this case a former attorney for defendant offered to testify. The court, no doubt under the ruling in the Ryan case, refused to allow him to do so. Out of respect for the profession of which he is a member and of the court of which he is an officer, he should have withdrawn from the case. Under the circumstances we cannot say the court erred in excluding his testimony. The record does not show that the excluded evidence was produced at the hearing of the motion for a new trial as required by 60-3004 of the civil code, and which by 62-1414 is made applicable to motions for new trials in criminal cases. (*State v. Crane*, 136 Kan. 181, 14 P. 2d 634; *State, ex rel., v. Wright*, 140 Kan. 679, 38 P. 2d 135.) Moreover, there was no offer to show the nature of the excluded testimony. The witness-lawyer stated that he did not know whether the proffered evidence was material. This court has no authority to reverse the judgment of the trial court because of immaterial errors (G. S. 1935, 62-1718), and as we have no knowledge of the nature of the excluded testimony, we cannot say it was material.

Error is assigned on the exclusion of a certain partnership agreement between two parties—Tork and Maloney. That agreement was dated June 15, 1937, and stated these parties were to be equal partners in the Kingsbury Beverage Company. The evident purpose was to show that the defendant had no connection with that company on the date the check was issued. The defendant was charged with issuing a check when at the time he had insufficient funds in

the bank to cover it. This was the gravamen of the crime denounced by the statute. The testimony of the witnesses Upton, O'Brien and Tork showed the defendant was in apparent charge of the business. The witness Upton testified that defendant was in the office of the company after the beer had been ordered by Scott and before it was delivered; that defendant was informed the beer had been ordered, and that defendant directed the witness, who was in charge of the office, to deliver the check in payment of the beer when it was unloaded. The partnership agreement was signed by third persons, and as no connection was shown between the defendant and such parties as to the agreement, there was no error in the exclusion of this paper.

The defendant further contends that no crime was committed under the statute, and therefore the motion to discharge the defendant at the close of the state's evidence should have been sustained. The point is thus stated in defendant's brief:

"This clearly shows that the defendant had instructed Margaret Upton never to issue a check unless there were funds on deposit to meet it. From the evidence in the case, it appears that these instructions by the defendant to Margaret Upton were never retracted. On page 5 of appellant's abstract, the evidence shows that Margaret Upton was the only one who handled the checks and took care of the banking account, but Bechtelheimer never had anything to do with it except sign the checks.

"From the above and foregoing, it is apparent that the evidence in this case fails to establish the fact that the defendant willfully issued this check with the knowledge that there were no funds on deposit to meet it, and therefore the court should have discharged the defendant at the conclusion of the state's evidence."

On this point we quote from the testimony of Margaret Upton, who was bookkeeper for the Kingsbury Beverage Company:

"Q. Between the time Mr. Scott ordered the load of beer and the time of its delivery and the issuance of this check, did you see Mr. Bechtelheimer? A. Yes.

"Q. Where and when? A. He was in our office.

"Q. After Mr. Scott ordered the beer? A. Yes.

"Q. Did you there enter into a conversation or overhear a conversation between anyone and Mr. Bechtelheimer regarding this load of beer? A. Mr. Bechtelheimer was told that the beer had been ordered.

"Q. Do you recall who told him that? A. To the best of my recollection, I think it was our warehouseman.

"Q. Were you present? Did you hear that? A. Yes.

"Q. What response did Mr. Bechtelheimer make to that? A. Well, he was told we were out of beer and Mr. Scott had gone ahead and ordered a load of beer.

"Q. Did he say anything about paying for it? A. Yes, it was to be paid for. Well, I was to pay for the load of beer when it was unloaded.

"Q. Who told you that? A. Mr. Bechtelheimer.

"Q. Mr. Bechtelheimer told you that there that day? A. Yes.

"Q. Now, the load of beer came in, I believe you testified. Were you there when the beer was unloaded? A. Yes.

"Q. Did you pay for the load of beer? A. Yes.

"Q. How did you pay for it? A. By check.

"Q. Is it the particular check which is set out in this complaint or information, dated July 5, 1937, in the sum of $675? A. Yes."

And on cross-examination, Scott, the witness, testified:

"Q. Well, as a matter of fact, Tork delivered the check, or told you to deliver the check, to the driver of the truck, didn't he? A. No.

"Q. Well, who told you? A. I was told before the beer came in that it was to be paid for with one of those checks.

"Q. Who told you? A. Mr. Bechtelheimer."

The bad-check statute was construed in *State v. Avery*, 111 Kan. 588, 590, 207 Pac. 838. In that case the court stated:

"The worthless check must be willfully drawn, knowing at the time there are no funds on deposit to meet it. Beyond that, the legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive or moral turpitude of the doer."

This construction was followed in *State v. Crane*, 136 Kan. 181, 14 P. 2d 634.

That the check was drawn willfully—that is, intentionally, knowingly and purposely—was admitted in the stipulation and proved not only by the testimony of the bookkeeper Upton, but by the testimony of the defendant. It was admitted the check was returned with the bank's notation "insufficient funds," and the bookkeeper for the bank testified that the account was short. As defendant specifically directed the delivery of the check in payment of the beer, a prior direction he may have given that no check was to be issued unless there were sufficient funds in the bank became immaterial. Under the statute an intent to defraud is not an ingredient of the crime. We think the motion to discharge the defendant was properly overruled.

The judgment is affirmed.

HARVEY, J., not sitting.