No. 35,517

JOHN YARMICK (also known as JOHN YARMEK), *Appellee*, v. THE METROPOLITAN LIFE INSURANCE COMPANY et al. (Defendants), JOSEPH YARMICK (also known as JOSEPH YARMEK), *Appellant*.

(131 P. 2d 881)

Opinion filed December 12, 1942.

*N. E. Snyder,* of Kansas City, argued the cause, and *Frank H. Thompson,* of Kansas City, was on the briefs for the appellant.

*C. D. Bruce,* of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by John Yarmek, an insured, to recover the cash surrender value of a life insurance policy to the exclusion of the defendant, Joseph Yarmek, his nephew, who had paid the premiums on the policy from the time it lapsed and when it had no surrender value, and who was the designated beneficiary on the policy. Plaintiff prevailed, and the defendant, Joseph Yarmek, appeals.

Appellant contends the verdict was contrary to the evidence and that judgment should have been rendered in his favor. He further insists the court erred in permitting appellee's attorney to be a witness on material matters for his client and also to continue to represent him as attorney, over appellant's objections. He therefore contends he was at least entitled to a new trial. The alleged errors will be treated in the order stated.

The defendant, Metropolitan Life Insurance Company, pursuant to the provisions of G. S. 1935, 60-418, deposited the cash surrender value of the policy in court and requested that payment be made to the party entitled to receive it. It further alleged that on April 17, 1936, the insured, John Yarmek, made a written request that Joseph Yarmek, nephew of John Yarmek, be designated as beneficiary on the policy.

The instant controversy is solely between John Yarmek, appellee, and his nephew Joseph Yarmek, the appellant. Appellee claimed there was no agreement between him and appellant that if appellant would pay the premiums on the policy he should have the proceeds thereof, and appellee further pleaded he did not direct the defendant company in writing to designate appellant as the beneficiary.

The jury made special findings of fact as follows:

"1. Did the defendant Joseph Yarmek pay the premiums on the insurance certificate involved in this action from the year 1933 until April 15th of the year 1940? A. No.

"2. Did John Yarmek ever pay any premiums on the insurance policy involved in this action? A. Yes.

"3. Did plaintiff and defendant Joseph Yarmek have an agreement in substance that if Joseph Yarmek would pay the premiums he should have the proceeds of the policy? A. No.

"4. Did John Yarmek direct the Metropolitan Life Insurance Company in writing to name Joseph Yarmek as beneficiary in the insurance certificate in this action? A. No."

Appellant moved to have the findings set aside upon the ground they were not supported by the evidence but were contrary thereto. Appellee has filed no counter abstract or brief. We must, therefore, assume appellee concedes appellant has properly abstracted the facts.

We find no evidence in the record to support the first finding. In fact, the undisputed evidence in the record before us requires an exactly contrary finding.

We find no evidence in the record before us that appellee John Yarmek personally paid any premium on the policy. The record discloses that one Joe Chukurim paid the premiums for approximately nine and one-half years and that thereafter they were all paid by appellant. We therefore find no evidence to support finding No. 2. We may also say Joe Chukurim is not a party to the instant action and is not asserting any interest in the surrender value. When the policy lapsed it had no surrender value.

What about special finding No. 3? The record discloses when the policy lapsed for failure to pay premiums in 1933, that John Yurotovich, the agent of the insurance company who collected the premiums, suggested to appellee that appellee might get his nephew (appellant), who was supporting appellee, to pick up the policy and pay the premiums. Appellee consented to have the agent interview appellant for that purpose. That was done. Appellant then interviewed appellee. Concerning that interview the record discloses the following testimony of appellant:

"A. Well, I asked him if it would be all right, that there was a policy on him which I didn't know anything about, and if it would be all right for me to pick it up, and pick up the payments that was due. And he said, 'Yes; as you are the only relative I have got, and you are keeping me up, you keep the policies; it is all yours.' And so the next time the agent came around I told him so, and he issued. . . .

"Q. (Interrupting). What if anything did your uncle say at that time about you as beneficiary? A. He said, 'I will sign over any time you want, any papers you want.' "

Appellee denied he had at any time told appellant he was to receive the proceeds of the policy or that he would sign any papers to that effect. The testimony, touching this conversation, was therefore in conflict and the jury was justified in the answer it made to

question No. 3, insofar as that conversation was concerned. It may be well to note, however, that the proper answer to question No. 4 would also tend in some respects to affect the proper answer to question No. 3.

What about finding No. 4? Defendant introduced an instrument which purported to be an application for designation of beneficiary. It purported to be signed by appellee and was dated April 17, 1936. It requested that payment of death benefits be made to Joseph Yarmek, nephew of appellee. The application also recited that the nephew (appellant) had the policy in his possession and that he was paying the premiums thereon. The oral testimony of the insurance company's agent also disclosed appellant had possession of the policy as late as 1940, and that appellee in 1940 orally advised him to designate his nephew as the beneficiary, and that such designation was made on the policy in 1940. Appellee denied he had orally advised the agent to designate appellant as the beneficiary. Question No. 4, however, pertains to such direction in writing. The written application for such designation, as heretofore stated, was dated April 17, 1936. It was signed by mark instead of by the ordinary signature and was as follows:

his<br>
"JOHN ✕ YARMEK"<br>
mark

The agent of the insurance company testified appellee signed the application by the foregoing mark and that he, the agent, witnessed the mark. Appellee on direct examination denied he had signed such application, but on cross-examination virtually admitted he had done so. He stated:

A. "I don't know for sure.
Q. "All right. A. It may be my mark."

In view of the testimony before us question No. 4 was improperly answered.

No objections appear to have been made to the instructions by appellee and none are urged now by either party. They became the law of the case. They clearly placed upon appellee the burden of proving by a preponderance of the evidence that appellant's name was endorsed on the policy without appellee's consent or authority. The jury was plainly instructed that unless appellee met such burden of proof, the verdict must be for the defendant. In view of the

record here we have no hesitancy in saying appellee's proof was insufficient and that the answer to question No. 4 should have been "yes" instead of "no." In view of the instructions given, it clearly becomes unnecessary to consider the effort of finding No. 3, assuming that finding is permitted to stand with full force and effect. This conclusion requires a reversal of the judgment.

Appellant also insists the trial court erred in permitting appellee's attorney to act in the double capacity of witness and attorney. The objection was that if appellee's attorney insisted upon testifying as to material matters, he should be required to withdraw as attorney. His testimony did not pertain to merely formal matters such as the attestation or the custody of an instrument and the like, nor to matters concerning which he alone could testify. His testimony dealt with material conversations he had with the insurance company officials concerning the endorsement of appellant's name as beneficiary on the policy. The record discloses other witnesses of appellee were present at such conferences. One of the witnesses testified in the case on other matters. No reason appears why it was essential to the ends of justice that appellee's attorney should have testified in the case. The record tends to disclose the contrary. Among the canons of professional ethics adopted by The American Bar Association, and the Kansas Bar Association, is section 19, which provides:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice a lawyer should avoid testifying in court in behalf of his client." (144 Kan. p. XI.)

See, also, *State v. Ryan*, 137 Kan. 733, 22 P. 2d 418; *Earhart v. Tretbar*, 148 Kan. 42, 80 P. 2d 4; *Protheroe v. Davies*, 149 Kan. 720, 89 P. 2d 890; *State v. Bechtelheimer*, 151 Kan. 582, 100 P. 2d. 657.

In addition to such testimony we find the attorney for appellee strongly emphasized his own testimony in oral argument and attacked the good faith of the insurance company officials in endorsing the name of appellant on the insurance policy. The question is not whether we have a statute which makes the attorney an incompetent witness. The real question is whether the trial court abused sound judicial discretion in permitting appellee's attorney to testify under the circumstances and to continue in the case as attorney for appellee. The trouble with appellant's contention, however, is that

the record does not disclose the alleged error was called to the attention of the district court in the motion for a new trial. Under these circumstances we will not review the alleged error.

The judgment is reversed with directions to enter judgment for appellant.