[Civ. No. 19422. Fourth Dist., Div. Two. Nov. 7, 1978.]

THE PEOPLE ex rel. EVELLE J. YOUNGER,
as Attorney General, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
JOHN MANUEL RABACA et al., Real Parties in Interest.

[Civ. No. 19423. Fourth Dist., Div. Two. Nov. 7, 1978.]

THE PEOPLE ex rel. JAMES M. CRAMER,
as District Attorney, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
JOHN MANUEL RABACA et al., Real Parties in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and J. Richard Haden, Deputy Attorneys General, James M. Cramer, District Attorney, and Joseph A. Burns, Deputy District Attorney, for Petitioners.

No appearance for Respondent.

Charles E. Ward, Public Defender, Anne L. Blanchard, Ellen E. Brodie, Deputy Public Defenders, Beverly Quinn and J. Michael Welch for Real Parties in Interest.

**OPINION**

**KAUFMAN, J.**—These are consolidated mandate proceedings by which the District Attorney of San Bernardino County and the Attorney General of the State of California seek to annul orders of the San Bernardino Superior Court recusing the entire prosecutorial office of the district attorney as prosecutor and ordering the Attorney General to undertake the prosecution in a pending case in which real parties in interest Rabaca, French and Roybal (hereafter referred to as defendants or real parties) are charged by indictment with murder.[1]

The essential question presented is whether the trial court abused its discretion in recusing the district attorney and his entire prosecutorial staff because one of his deputies may be called as a witness at trial to testify in respect to the circumstances surrounding two pretrial identifications of the defendants as the perpetrators of the crime. We determine that in exercising its discretion the trial court employed an incorrect standard of disqualification but that, in any event, neither rule 2-111(A)(4) of the Rules of Professional Conduct of the State Bar nor the decisions in *People* v. *Superior Court (Greer),* 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164], or *Comden* v. *Superior Court,* 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971], require recusal of the entire prosecutorial office of the district attorney in the circumstances shown and that the order made, which precludes the district attorney from performing the statutory duties of his elected office, constituted an abuse of discretion in the absence of a showing that such a sweeping order was reasonably

---

[1]Rabaca and French are charged with an additional count of assaulting a life prisoner.

required to insure the integrity of the fact-finding process, the fairness or appearance of fairness of trial, the orderly or efficient administration of justice, or public trust and confidence in the criminal justice system. The invalidity of the order recusing the district attorney renders superfluous and unwarranted the order commanding the Attorney General to assume the prosecution, and it is unnecessary for us to determine whether the trial court would have been legally authorized to make such an order were the recusal order proper.

The operative facts are not in dispute. On May 14, 1977, William Gonzales, a prisoner at the California Institution for Men at Chino was stabbed to death by other inmates. In the course of an investigation conducted by a California Department of Corrections investigator, another C.I.M. inmate, John Spinelli, made a photographic identification of real parties in interest Rabaca and French as participants in the crime.

Several weeks later another C.I.M. inmate, Robert E. Myers, communicated with San Bernardino Sheriff's Detective Thomas Denham, indicating he had information concerning the crime but would divulge it only in the presence of Detectives Denham and O'Rourke and someone from the district attorney's office. As arranged by Detective Denham, on June 14, 1977, Thomas W. Spivey, a San Bernardino County Deputy District Attorney assigned to the Ontario office interviewed Myers in the presence of Detectives Denham and O'Rourke and Joseph D. Canty, Jr., the Chief Deputy San Bernardino County District Attorney in charge of the Ontario office. Neither detective took any active part in the interview. They were not involved in the investigation of the case and merely accompanied Spivey and Canty to introduce them to Myers. The interview was tape recorded. Myers stated he had been asked to take part in and was an eyewitness to the murder. He recounted the events that occurred before, during and after the murder and stated that real parties Rabaca, French and Roybal were participants in the crime. He said that Rabaca, known to him as "Charlie Brown," did the stabbing, that French, who had solicited Myers' participation and whom he knew by name, held the victim while Rabaca stabbed him and that Roybal, known to him by the name Roybal and also as "Kilroy," had planned and more or less directed the killing. Rabaca, French and Roybal were all in the same housing unit as Myers, and he had seen them on previous occasions. During the interview, Spivey displayed to Myers a set of 13 mug shots from which Myers pointed out Rabaca (as Charlie Brown) and French. Roybal's photograph was not among those shown to Myers because Spivey had theretofore been unaware of Roybal's involvement.

On June 21, 1977, shortly before Myers' testimony was to be presented to the grand jury, Spivey prepared and showed to Myers, again in the presence of Detective Denham, a second set of mug shots, including Roybal's. Myers immediately selected Roybal's photograph as that of the man he had identified as Roybal and "Kilroy." This interview of Myers lasted only about two minutes and consisted only of Myers' identification of Roybal.[2] It was not tape recorded.

Deputy District Attorney Spivey represented the People at various pretrial proceedings. On August 31, 1977, during hearing on a defense challenge to the pretrial photographic identification procedures involving Myers on the ground they were impermissibly suggestive, Spivey was called as a witness on behalf of the People. He gave testimony about the two interviews with Myers and Myers' identification of real parties. He also testified that it was a departure from usual investigative procedure for a deputy district attorney to make the initial presentation of a photographic display to an identification witness but that this was occasioned by Myers' willingness to tell what he knew only in the presence of the two sheriff's detectives and a member of the district attorney's staff. While Spivey was on the witness stand, another deputy district attorney acted as counsel for the People. Thereafter, however, Spivey resumed his role as prosecutor and presented argument on the fairness of the pretrial photographic identification procedure. Although it does not appear he specifically argued his own credibility, he did urge that the photographic displays were not unduly suggestive and the procedures employed were fair.

Although defense counsel made no objection to Spivey's being called as a witness and testifying or to his subsequently resuming the role of prosecutor and arguing, the court, referring to the *Greer* decision and an opinion of the ethics committee of the Los Angeles County Bar Association, expressed its concern that Spivey might be a material witness at trial and indicated to defense counsel that if they intended to make a motion to recuse the district attorney they should do so at an early date so that postponement of the trial might be avoided. Defense counsel expressed their interest in making such a motion, and the proceedings were continued to September 2. On that date the hearing on the validity

[2]Real party asserts that Spivey's testimony as to the duration of this second interview is in conflict. We do not so read the transcript. Spivey did testify that he was in and out of the room in which Myers and several other persons were present and that he was in Myers' presence for a longer time, but we find no contradiction in the record of his testimony that his interview with Myers lasted only one to two minutes.

of the pretrial identification procedures and several other motions were concluded and defense counsel presented and argued their motion to recuse the district attorney. On the motion concerning the pretrial identification procedures, the court ruled without prejudice that "neither [photographic] lineup was arranged in such an unduly prejudicial fashion that the rights of the defendants were violated." Relying principally on the *Greer* decision and rule 2-111(A)(4) of the Rules of Professional Conduct of the State Bar, the court granted the motion to recuse the district attorney notwithstanding Mr. Spivey's representation that it had already been determined in his office that he would not be the prosecuting attorney at trial.[3] The court also ordered the Attorney General to show cause why he should not be required to take over prosecution of the case.

In response to the order to show cause, the Attorney General filed a motion to vacate the order recusing the District Attorney of San Bernardino County and presented to the court declarations substantiating that neither Deputy Spivey nor Chief Deputy Canty would be the prosecutor at trial. The motion to vacate was heard and argued on September 16. The court denied the motion and ordered the Attorney General to assume prosecution of the case stating there was a reasonable probability Spivey would be called by one party or the other to testify at trial, that disqualification of the district attorney was therefore ethically required and that failure to grant defendants' motion would provide a built-in basis for appeal.[4]

---

[3] The court said: "In this case, we are talking about counsel in [the district attorney's] office possibly being required either to take the stand and another colleague of that individual possibly being required to examine that witness on the stand, and I think the Canons of Ethics are clear that *wherever there is a situation where trial counsel is a potential witness in the case, that not only should that attorney withdraw from the case* so that he can wear his one hat of being a witness unfeathered by any other responsibilities or considerations, but that any other attorney closely related to the attorney witness must also withdraw. So that in a civil case, if a partner is a potential witness, no other partners of that attorney witness can ethically serve as trial counsel. And I think that same analogy applies to a District Attorney's office." (Italics added.)

[4] The court stated: "As I indicated I guess two weeks ago when I last considered this matter, I don't consider that any of the activities of either Mr. Spivey or Mr. Canty in this case, up to the present time, are in any way unethical or illegal or improper. However, we have a situation where in this court's judgment, there is not only a possibility, but a reasonable probability that *Mr. Spivey may be called as a witness* during the course of the trial *by one side or the other*. And the cases are clear that—and also the Code of Ethics is clear, that in such situations where there is a reasonable probability that potential *trial counsel may be a witness* in a proceeding, *then that counsel has a duty to withdraw* from the case and other counsel take over. In this situation we are talking about a Deputy District Attorney, and where he is going to be a witness in a case certainly, because his colleagues

Rule 2-111(A)(4) of the Rules of Professional Conduct of the State Bar of California[5] (hereinafter rule 2-111(A)(4)) reads:

"(A) In general

". . . . . . . . . . . . . . . . . . . .

"(4) If upon or after undertaking employment, a member of the State Bar knows or should know that he or a lawyer in his firm *ought to be called as a witness on behalf of his client* in litigation concerning the subject matter of such employment he shall withdraw from the conduct of the trial and his firm [, if any, shall not continue representation in the trial, except that he] [6] may continue the representation and he or a lawyer in his firm may testify in the following circumstances: [¶] (a) If the testimony will relate solely to an uncontested matter; or [¶] (b) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or [¶] (c) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client; or [¶] (d) As to any matter, if refusal would work a substantial

---

are in a sense the prosecutors of the case, would appear to be a bit in conflict of interest. Because of the seriousness of this case, and as I have indicated as serious a case as presently possible under the present state of the law in this state, I think it would be an abuse of discretion on the part of this court not to protect the Constitutional rights of the defendant[s] in denying the motion to reconsider the original ruling. And, as a matter of fact, an abundance of caution requires that the court take this step, I think, to avoid a built in basis for appeal at the conclusion of this case." (Italics added.)

[5]Following the enactment in 1970 by the American Bar Association of its new Code of Professional Responsibility, the State Bar of California, pursuant to Business and Professions Code section 6076, promulgated new Rules of Professional Conduct which were approved by the California Supreme Court December 31, 1974, and became effective January 1, 1975. (See 3B West's Ann. Bus. & Prof. Code (1974 ed., 1978 Cum.Supp.) foll. § 6076, p. 56; Deering's Cal. Codes Ann. Rules (1976 ed.) at pp. 581-633; *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 911, fn. 1; 48 State Bar J. 328.)

[6]With respect to the bracketed inclusion, the court in *Comden* said: "The bracketed language does not appear in the text of the rule as proposed to and adopted by this court. (See Bus. & Prof. Code, § 6076.) The State Bar of California, in its brief as amicus curiae in support of petitioners, claims such language was omitted due to a typographical error which is claimed to have occurred after the rule was drafted by the State Bar and before approval by this court. No challenge is made to such assertion by the State Bar. However, our reading of the rule without the bracketed material is consistent with the text including such material, and we thus deem there to be no issue raised by the omission." (20 Cal.3d at p. 911, fn. 1.)

hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." (Italics added.)[7]

■ Initially petitioners contend the record does not support a conclusion that Deputy District Attorney Spivey ought to be called at trial as a witness on behalf of the People.[8] We do not reach this contention,

[7]Rule 2-111(A)(4) was derived from and is substantially the same as Disciplinary Rules 5-101(B) and 5-102(A) of the American Bar Association Code of Professional Responsibility adopted August 12, 1969. (See *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 912 [see also pp. 917-918, dis. opn., fn. 1]; *People* v. *Guerrero,* 47 Cal.App.3d 441, 445-446 [120 Cal.Rptr. 732]; 48 State Bar J. 328, 335.)

[8]Unless the procedures utilized were impermissibly suggestive, evidence of Myers' pretrial photographic identification of defendants would be admissible if offered by the prosecution. (See Evid. Code, § 1238.) Upon objection by the defendants, however, the People would have the burden of establishing the procedures were not impermissibly suggestive. (See *People* v. *Vanbuskirk,* 61 Cal.App.3d 395, 401 [132 Cal.Rptr. 30]; *People* v. *George,* 23 Cal.App.3d 767, 774 [100 Cal.Rptr. 427].) Deputy Spivey informed the trial court that the People did not intend to attempt to introduce evidence of the pretrial photographic identifications and would rely on Myers' in-court identification of defendants all of whom were housed in the same unit as Myers and were known to him. Thus, it was urged Spivey would not be called as a witness by the People. Since the trial court's finding that the pretrial photographic identification procedures were not unduly suggestive was made without prejudice, however, defendants could object at trial to Myers' in-court identifications on the ground they were the product of impermissibly suggestive pretrial photographic identification procedures. In that event, however, the burden of proving impermissible suggestiveness would rest upon the defendants (see *People* v. *Rodriguez,* 10 Cal.App.3d 18, 30 [88 Cal.Rptr. 789]; *People* v. *George, supra*), and it would be the defendants, not the People, who might find it necessary to call Spivey as a witness. Further, all these proceedings would take place outside the presence of the jury. (See Evid. Code, § 403, *People* v. *Floyd,* 1 Cal.3d 694, 712 [83 Cal.Rptr. 608, 464 P.2d 64].) If the court overruled their challenge to the pretrial photographic procedures, defendants could, of course, present evidence concerning them to the jury (see *People* v. *Douglas,* 259 Cal.App.2d 694, 698 [66 Cal.Rptr. 492]) but, once again, it would then be defendants who would be calling Spivey unless the People found it necessary to call him in rebuttal.

Real parties assert that the People might find it necessary to call Spivey should Myers recant. In response petitioners point out that, having become a "snitch," Myers is dependent upon the authorities for his safety and is unlikely to recant. Moreover, should he do so, petitioners point out that Detectives Denham and O'Rourke were present throughout Spivey's first interview with Myers and could testify thereto; that the tape recording of that interview is available for introduction into evidence; and that Detective Denham was also a percipient witness to Spivey's second interview with Myers and could testify with respect thereto.

While the likelihood of the need of an attorney's testimony is the prime factor to be considered by the trial court (*Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 913), rule 2-111(A)(4) requires withdrawal when the attorney "knows or should know that he . . . ought to be called as a witness on behalf of his client . . . ." The decisive question therefore is whether he *ought* to be called as a witness on behalf of his client, not whether he *will* be called, and a representation that he will not in fact be called on behalf of his client is not necessarily dispositive. (See *J. P. Foley & Co., Inc.* v. *Vanderbilt* (2d Cir. 1975) 523 F.2d 1357, 1359; *U.S.* ex rel. *Sheldon El. Co.* v. *Blackhawk Htg. & Plmg.* (S.D.N.Y. 1976) 423 F.Supp. 486, 489-490, fn. 5; cf. *Comden* v. *Superior Court, supra.*) "Whether an attorney ought to testify ordinarily is a discretionary determination based on the court's considered evaluation of all pertinent factors including, inter alia, the significance of the

however, for as appears from its quoted statements (see fns. 3 and 4, *ante*) and numerous similar statements throughout the proceedings, the trial court utilized an incorrect standard in exercising its discretion and did not determine whether Spivey ought to be called as a witness on behalf of the People. What the court found was that Spivey would likely be called as a witness by one party or the other—that he would likely be a material witness at trial. But the likelihood that an attorney will be a material trial witness does not disqualify him under the rule unless he ought to be called as a witness on behalf of his client. The very next subdivision of the rule, 2-111(A)(5), provides: "If, after undertaking employment in contemplated or pending litigation, a member of the State Bar learns or it is obvious that *he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation* until it is apparent that his testimony is or may be prejudicial to his client." (Italics added.) The provisions of Disciplinary Rule 5-102(B) of the American Bar Association Code of Professional Responsibility are identical. The decided cases are in accord. (*People* v. *Superior Court (Hollenbeck)*, 84 Cal.App.3d 491, 501 [148 Cal.Rptr. 704]; see also *Chessman* v. *Teets* (9th Cir. 1956) 239 F.2d 205, 214 [vacated on other grounds, 354 U.S. 156 (1 L.Ed.2d 1253, 77 S.Ct. 1127)]; *United States* v. *Maloney* (W.D. Pa. 1965) 241 F.Supp. 49, 51; *State* v. *Howard* (1976) 27 Ariz.App. 345 [554 P.2d 1282, 1285]; *Beavers* v. *Conner* (Fla.App. 1972) 258 So.2d 330, 332-333; *State* v. *King* (Iowa 1977) 256 N.W.2d 1, 15; *State* v. *Bennett* (La. 1976) 341 So.2d 847, 858; *Galarowicz* v. *Ward* (1951) 119 Utah 611 [230 P.2d 576, 580]; *Peterson* v. *Warren* (1966) 31 Wis.2d 547 [143 N.W.2d 560, 569-570] [overruled on other grounds in *Allen* v. *Ross* (1968) 38 Wis.2d 209 (156 N.W.2d 434, 438)]; Annot., Prosecuting Attorney As a Witness in Criminal Case (1973) 54 A.L.R.3d 100, 162.) Although this distinction was at least implicit in the argument of the district attorney in the trial court (see fn. 8, *ante*), its significance was apparently not recognized by the court.

Ordinarily, this conclusion would occasion our remanding the case to the trial court to enable it to exercise its discretion on the basis of the correct standard. ▮ However, we have concluded that even if the trial court were to determine within permissible bounds of judicial discretion that Spivey ought to be called as a witness on behalf of the People, rule 2-111(A)(4) would not require nor, indeed, authorize an

matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established. [Citation omitted.]" (*Comden* v. *Superior Court, supra*, 20 Cal.3d at p. 913.)

order recusing the entire prosecutorial office of the District Attorney of San Bernardino County.

Before discussing the reasons underlying this conclusion, it would appear prudent to make plain what the conclusion does and does not imply. ■ It does not imply and we do not suggest that a court may not recuse a district attorney and his entire prosecutorial staff in appropriate circumstances. It is established a court may make such an order when it appears reasonably necessary to insure the fairness or appearance of fairness of trial or the orderly and proper administration of justice or to preserve the integrity of the fact-finding process or public confidence in the criminal justice system. (*People* v. *Superior Court (Greer), supra,* 19 Cal.3d at pp. 261-269; *Younger* v. *Superior Court,* 77 Cal.App.3d 892, 897 [144 Cal.Rptr. 34]; see *People* v. *Superior Court (Hollenbeck), supra,* 84 Cal.App.3d at p. 500.[9]) Neither do we intimate that the Rules of Professional Conduct are inapplicable to attorneys employed as public prosecutors or that attorneys employed as public prosecutors in the trial of criminal cases are held to any less stringent ethical standards than attorneys employed in private practice or engaged in civil trials. ■ On the contrary, the Rules of Professional Conduct are applicable to all members of the State Bar of California (Bus. & Prof. Code, §§ 6076, 6077; Rules Prof. Conduct of State Bar, rule 1-100; see *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 911, fn. 1) including district attorneys and their deputies (see *People* v. *Superior Court (Greer), supra,* 19 Cal.3d at p. 261; *People* v. *Guerrero, supra,* 47 Cal.App.3d at pp. 445-449). Indeed, because they administer offices of public trust, it is essential that public prosecutors adhere to the highest standards of ethical conduct. (See *People* v. *Superior Court (Greer), supra,* 19 Cal.3d at pp. 266-267.)

■ Accordingly, we think it appropriate to say that we do not fully agree with the trial court's conclusion that the conduct of Deputy District Attorney Spivey up to the time of the recusal motion involved no impropriety (see fn. 4, *ante*). Whether or not the circumstances were such that he ought to be called as a witness on behalf of the People at trial, the

---

[9]To the extent *Hollenbeck* indicates a court may recuse an entire district attorney's office *in appropriate circumstances* because one attorney in the office ought to testify at trial on behalf of the prosecution, we do not disagree with it. (See fn. 21, *infra.*) To the extent its language may be taken to mean that the mere fact that one deputy ought to testify at trial will ordinarily warrant recusal of the entire prosecutorial office without more, we do not agree. The pertinent language in *Hollenbeck* was, we observe, unnecessary to the decision.

fact is that Deputy Spivey actually testified at the pretrial hearing concerning the photographic identification procedures and his interview with Myers and then resumed his role as counsel for the People at that very hearing and argued the fairness of the identification procedures about which he testified. That was contrary to the mandate of rule 2-111(A)(4) and was improper.[10] Rule 2-111(A)(4) prescribes only withdrawal "from the conduct of the trial," but the word "trial" is broad enough to include a pretrial hearing at which the testimony of witnesses is taken and a contested fact issue is litigated, and consideration of the reasons for the rule (*infra*) indicates the rule should not be so narrowly construed as to make it inapplicable to a deputy district attorney's acting as both prosecutor and material prosecution witness at a pretrial hearing that might significantly affect the trial. To the extent *People* v. *Superior Court (Hollenbeck), supra,* 84 Cal.App.3d at page 502, implies the word "trial" should be more narrowly construed, we do not agree with it. In the case at bench the court's ruling that the pretrial photographic identification procedures were not unduly suggestive was made "without prejudice," presumably meaning that real parties may relitigate the issue at trial. However, pretrial motions of this sort normally result in an order binding at trial in the absence of newly discovered evidence or other unusual circumstances justifying relitigation of the issue.

■ Whether Deputy Spivey's testifying at the pretrial hearing in the case at bench would have warranted or required his recusal as prosecutor at trial is not a question to be decided in this case. (Cf. *People* v. *Superior Court (Hollenbeck), supra,* 84 Cal.App.3d at pp. 501-502 [that several district attorneys ought to testify at pretrial proceedings did not warrant recusal of entire district attorney's office as prosecutor at trial].) From the statements of the trial court at the conclusion of both the original motion and the motion to vacate (see fns. 3 and 4, *ante*), it is clear that neither the recusal order nor the order denying the motion to vacate was based upon the fact Spivey testified at the pretrial hearing and, more importantly, the recusal order was not limited to Spivey. On the contrary, notwithstanding

[10]We ascribe to Deputy District Attorney Spivey no knowing or intentional misconduct, nor did his actions involve any dishonesty, deception or immorality. As we shall hereafter explain, rule 2-111(A)(4) is not concerned with such problems nor, indeed, conflicts of interest in the usual sense and is more a rule of propriety than of ethics in the true sense of the word. Spivey's actions apparently resulted from his erroneous belief, apparently shared to a large extent by defense counsel and the court, that no impropriety was involved because of the pretrial nature of the proceeding and the fact it was tried to the court without jury. These considerations, however, are more pertinent to a determination whether a violation of rule 2-111(A)(4) warrants or requires reversal of a conviction than whether the rule applies in the first instance. (See *People* v. *Battin,* 77 Cal.App.3d 635, 671-672 [143 Cal.Rptr. 731]; cf. *People* v. *Cannon* (1975) 25 Ill.App.3d 737 [323 N.E.2d 846, 852].)

the uncontradicted declarations that neither Spivey nor Chief Deputy Canty would be assigned as trial prosecutor, the court recused the district attorney and his entire prosecutorial staff analogizing the relationship between fellow deputies in the district attorney's office to that between partners in a law firm. (See fn. 3, *ante.*) Consideration of rule 2-111(A)(4) in light of its reasons, numerous related rules of the Rules of Professional Conduct, Formal Opinion 339 of the American Bar Association's Committee on Ethics and Professional Responsibility (hereafter Formal Opinion 339) and numerous decisions from jurisdictions throughout the United States convinces us that that part of rule 2-111(A)(4) that purports to require withdrawal by a law firm and all lawyers in the firm when any lawyer in the firm ought to be called as a material witness on behalf of the client, was not intended to and does not refer or apply to a multideputy district attorney's office, and the analogy drawn by the trial court is inapt.

Arguably, the word "firm" and the phrase "a lawyer in his firm" used in rule 2-111(A)(4) are susceptible to an interpretation that includes a multideputy district attorney's office and a deputy within such an office, but rule 2-111 and numerous others of the Rules of Professional Conduct contain rather unmistakable indicia that these expressions were intended to refer to law firms undertaking employment for remuneration and the attorneys in such firms. Rule 2-111 is entitled "Withdrawal from Employment." Subdivision (A)(3) of rule 2-111, the subdivision immediately preceding the subdivision we have referred to here throughout as rule 2-111(A)(4), specifies that the withdrawing attorney must "refund promptly any part of a fee paid in advance that has not been earned" except for a true retainer fee. Needless to say, neither district attorneys' offices nor deputy district attorneys receive retainer or other fees. Rule 2-103 and its subdivisions which pertain to the use of professional cards, announcements, office signs, letterheads, directory listings, etc. employ the word "firm" and variants thereof many times, e.g., "firm of which he is a member," "predecessor firms," and "firm." The content of the regulatory provisions would have little, if any, application except to a law firm engaged in practice for remuneration and in many instances would be nonsensical if applied to a multideputy district attorney's office. Rule 3-102 provides in pertinent part: "A member of the State Bar or a *firm of which he is a member* shall not directly or indirectly *share legal fees* except with a person licensed to practice law. . . ." (Italics added.) Subdivision (1) of the same rule states an exception: "An agreement by a member of the State Bar *with his firm* . . . may provide for the payment of money, over a reasonable period of time after his death, to his estate or to one or more specified persons." (Italics added.) Quite obviously, "firm" as used

in rule 3-102 refers to a firm engaged in the practice of law for remuneration. Rule 8-101 is entitled "Preserving Identity of Funds and Property of a Client." It refers to "funds received or held for the benefit of clients by a member of the State Bar *or firm of which he is a member,* including advances for costs and expenses" and "[f]unds belonging in part to a client and in part presently or potentially to the member of the State Bar or *firm of which he is a member*" (italics added) and requires that such funds be deposited in a separate, identifiable bank account entitled " 'Trust Account' " or " 'Client's Funds Account.' " (Italics added.) Rule 1-100, which is the only rule brought to our attention which attempts in any way to define "firm," provides in its final paragraph: "Wherever in these rules reference is made to a law firm or association, such reference shall also apply to a law corporation." Had it been intended that "firm" or "law firm" should refer also to an organization such as a multideputy district attorney's office one would expect to find some indication of that fact in the quoted paragraph. Certainly the promulgators of the Rules of Professional Conduct were not unmindful of the applicability of the rules to district attorneys and their deputies. (See Rules of Prof. Conduct, rule 7-102;[11] see also ABA Code of Prof. Responsibility, EC 7-13 [see fn. 19, *infra*].)

Further indication that the word "firm" used in rule 2-111(A)(4) was intended to refer to a law firm engaged in practice for remuneration is found in Formal Opinion 339 which was issued January 31, 1975, and is the definitive legal ethics opinion relating to canon 5, Ethical Considerations EC 5-9 and EC 5-10 and Disciplinary Rules DR 5-101(B) and DR 5-102(A) of the American Bar Association Code of Professional Responsibility from which rule 2-111(A)(4) was derived.[12] (See fn. 7, *ante.*) The opinion purports to review the underlying purposes of Disciplinary Rules DR 5-101(B) and DR 5-102(A). In respect to the requirement that a "firm" and all lawyers in the firm withdraw when a lawyer in the firm ought to testify on behalf of the client, the opinion states: "[T]he principal ethical objections to a lawyer's testifying for his client as to contested issues are that the client's case will, to that extent, be presented through testimony of an *obviously interested witness who is subject to impeachment*

---

[11]Rule 7-102 provides: "A member of the State Bar in government service shall not institute or cause to be instituted criminal charges when he knows or should know that the charges are not supported by probable cause. If, after the institution of criminal charges, a member of the State Bar in government service having responsibility for prosecuting the charges becomes aware that those charges are not supported by probable cause, he shall promptly so advise the court in which the criminal matter is pending."

[12]The opinion is printed in full in the February 1975 issue of the American Bar Association Journal (61 A.B.A. J. 245.)

*on that account;* and that the advocate is, in effect, put in the unseemly position of arguing his own credibility or that of a lawyer in his firm. . . . [¶] The fact that a witness may be interested, *even financially,* in the outcome of the case, does not necessarily mean that he will testify falsely or will color or slant his testimony to favor the party with whom his interest rests. But given a choice between two or more witnesses competent to testify as to contested issues, and other factors being equal, a client's cause is best served by having the testimony from the witness not subject to impeachment for interest in the outcome of the trial. [¶] *Because a trial advocate clearly possesses such an interest, his testimony, or that of a lawyer in his firm, is properly subject to inquiry based on such interest, perhaps including elements of his fee arrangement in some instances. . . ."* (Italics added.)

Further, the reasons advanced for the disqualification prescribed by rule 2-111(A)(4) of an entire law firm when one member of the firm ought to be called as witness on behalf of the client have little or no application to a multideputy district attorney's office. To properly evaluate the reasons said to require disqualification of the entire law firm and all its members (sometimes hereafter referred to as the extended rule or the rule as extended) it is necessary to review briefly the reasons said to underly the basic rule that one attorney should not act as both trial counsel and material witness for his client. There is a surprising lack of agreement as to the true bases for the rule. Numerous diverse, overlapping and sometimes inconsistent reasons have been advanced in support of it. (See generally, *Comden v. Superior Court, supra,* 20 Cal.3d at pp. 912, 917-918, fn. 1; *People v. Guerrero, supra,* 47 Cal.App.3d at pp. 445-448; *International Electronics Corp. v. Flanzer* (2d Cir. 1975) 527 F.2d 1288, 1294; *U.S. ex rel. Sheldon El. Co. v. Blackhawk Htg. & Plmg., supra,* 423 F.Supp. at p. 489; *Erwin M. Jennings Co. v. Di Genova* (1928) 177 Conn. 491 [141 A. 866, 868-869]; ABA Code of Prof. Responsibility, canon 5 and EC 5-9;[13] Formal Opn. 339 [see fn. 12, *ante,* and following text]; 6 Wigmore, Evidence (Chadbourn rev. 1976) § 1911, pp. 775-780; Enker,

---

[13]Canon 5 reads: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client."

Ethical Consideration EC 5-9 reads: "Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

*The Rationale of the Rule That Forbids a Lawyer to Be Advocate and Witness in the Same Case,* (Spring 1977) Am. Bar Foundation Research J. 455 [hereafter cited as Enker]; Sutton, *The Testifying Advocate,* (1963) 41 Texas L.Rev. 477 [hereafter cited as Sutton]; Comment, *The Rule Prohibiting an Attorney from Testifying at a Client's Trial; An Ethical Paradox* (1976) 45 Cin.L.Rev. 268 [hereafter cited as Comment].)

Four commonly accepted bases for the rule are alluded to in Ethical Consideration EC 5-9 of the Code of Professional Responsibility (see fn. 13, *ante*) as well as numerous of the authorities just cited: (1) because of interest or the appearance of interest in the outcome of the trial, the advocate who testifies at trial may be subject to impeachment and the evidentiary effect of his testimony will be weakened; (2) opposing counsel may be handicapped in cross-examining and in arguing the credibility of trial counsel who also acts as a witness for his client; (3) an advocate who becomes a witness may be in the unseemly position of arguing his own credibility, which may, in itself or in combination with the jurors' tying his persuasiveness as an advocate to his credibility as a witness, make him a less effective advocate;[14] (4) the role of advocate and witness are entirely inconsistent and should not be assumed by one individual. Reason (4) may properly be divided into several sub-reasons: (a) the attorney's zeal as an advocate may becloud his objectivity as a witness; (b) the advocate who acts as a witness for his client may find it difficult to keep separate in his mind the matters of which he has personal knowledge and the evidence in the case; (c) the jury may have difficulty keeping properly segregated the arguments of the attorney acting as advocate and his testimony as a witness; and (d) in some instances the advocate's testimony may be such as to be tantamount or be taken by the jury as tantamount to an expression by the advocate of his personal opinion as to the justness of his cause, the credibility of one or more witnesses, the culpability of a civil litigant or the guilt or innocence of a criminally accused, which, of course, would be improper (see ABA Code of Prof. Responsibility, EC 7-24; see also, e.g., *People* v. *Kirkes,* 39 Cal.2d 719, 723-724 [249 P.2d 1]; *People* v. *Arends,* 155 Cal.App.2d 496, 506-507, 509-510 [318 P.2d 532]). A fifth generally accepted basis for the rule, said by Professor Wigmore to be "the most potent and most common reason judicially advanced" (6 Wigmore, Evidence,

[14]The authorities appear to treat the possibility that the advocate will be required to argue his own credibility as a separate basis for the rule. (See e.g., ABA Code of Prof. Responsibility, EC 5-9 [see fn. 13, *ante*]: Formal Opinion 339, *supra* [see text following fn. 12, *ante*].) We observe, however, that it might well be classified as another sub-reason under reason (4), the conflicting roles of advocate and witness. (Cf. Sutton, *supra,* 41 Texas L.Rev. at p. 481 [text preceeding fn. 18]: Comment, *supra,* 45 Cin.L.Rev. at p. 271 [text following fn. 30].)

*supra,* § 1911, p. 775-776), but, curiously, not mentioned in Ethical Consideration EC 5-9 or Formal Opinion 339, is the appearance of impropriety: ". . . not that lawyers as witnesses may distort the truth in favor of the client, but that the public will *think* they may, and that the public's respect for the profession and confidence in it will be effectively diminished." (6 Wigmore, Evidence, *supra,* §.1911, pp. 775-776; see also, e.g., *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 912.)

The objections are, of course attenuated when trial counsel is not the attorney-witness himself but rather a member of the same law firm (see *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 912) for those reasons for the basic rule that are specifically predicated upon the assumption of the dual role of trial advocate and material trial witness on behalf of the client by a single individual (primarily reason (4) and its sub-reasons, *ante*) are at once inapplicable for the most part. Indeed, from their adoption in 1908 until their replacement by the Code of Professional Responsibility in 1970, the Canons of Professional Ethics of the American Bar Association contained no express provision requiring withdrawal of an entire law firm from representation of the client because one attorney in the firm was to be a material witness at trial. (See *International Electronics Corp.* v. *Flanzer, supra,* 527 F.2d at p. 1294.) Canon 19 provided simply: "When a lawyer is a witness for his client, except as to merely formal matters, . . . he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client." There was, however, decisional law disapproving of the attorney-witness' law partner acting as trial counsel. Perhaps the classic statement of the reasons for disqualifying not only the attorney-witness but also his law partner is found in *Erwin M. Jennings Co.* v. *Di Genova, supra,* 141 A. at pages 868-869, where, after reviewing the reasons said to underlie the basic rule that an attorney should not act as advocate and material witness for his client in the same case, the court said, in dicta: "If it be a wrong practice for an advocate in the conduct of a trial to be at once the advocate and a witness in the trial, we see no legal nor logical difference between the position of a partner who is the advocate in the cause and the partner who is a sharer in the fees obtained but who does not appear as an attorney in the conduct of the case. They are each responsible for the litigation. Professor Wigmore says the most potent reason for the prohibition of the attorney as a witness in behalf of his client lies in the dangerous effect the practice will have upon the public mind tending to effectively diminish and undermine 'the public respect for the profession and confidence in it.' [Citation omitted.] The public will be apt to think that the lawyer,

whether he is an active partner in the conduct of the trial and also a material witness, or an inactive partner and a material witness, will be inclined to warp the truth in the interest of his client. If this feeling will be more easily generated in the case of the active partner than in the case of the inactive partner, it will only be a question of degree. In either case the distrust will be created. The rule of prohibition for the inactive partner, as for the active partner, is for his own protection, not because the court thinks that he in either case will in fact often be exposed to temptation, but to avoid the appearance of wrongdoing. Integrity is the very breath of justice. Confidence in our law, our courts, and in the administration of justice is our supreme interest. No practice must be permitted to prevail which invites towards the administration of justice a doubt or distrust of its integrity. Between the prevention of that and the occasional deprivation of an attorney or a firm of attorneys from a part of his prospective fees in a given case there is no choice. . . ."

Similar reasons for disqualification of a law partner are advanced by Professor Sutton: "A lawyer testifying for a party represented by his law partner is also subject to impeachment for bias. The appearance of interest and bias possibly is less when the legal fee will not be shared by the testifying partner. Nevertheless, the relationship of partners is inescapably close, so close that the appearance of bias persists. Too, the advocate must argue the credibility of his partner's testimony, and the situation is calculated to evoke lay criticism of the zealousness of lawyers and law firms. The same policy considerations are at work; it is only a matter of degree. . . ." (Sutton, *supra*, 41 Texas L.Rev. at p. 492 [fns. omitted]; see also Formal Opn. 339, *supra* [see fn. 12, *ante*, and following text].)

It appears, therefore, that the reasons for the basic rule most emphasized when the trial attorney is a member of the same law firm as the attorney-witness are those based on the common interest of the attorney-witness with his law firm in the outcome of the litigation and the appearance of impropriety. (See *Comden v. Superior Court, supra*, 20 Cal.3d at p. 912.)

The soundness and sufficiency of the suggested bases of both the basic rule and the rule as extended have been seriously questioned by legal commentators (see 6 Wigmore, Evidence, *supra*, § 1911, pp. 775, 780; Enker, *supra*, Am. Bar Foundation Research J., pp. 455-462; Comment, *supra*, 45 Cin.L.Rev. at pp. 268-272; Levy, *Time to Review the Code*, (Feb.

1976) 62 A.B.A. J. 225 [hereafter cited as Levy]; see also Sutton, *supra,* 41 Texas L.Rev. 477 et seq.) as, indeed, has the desirability of the rule itself (see Comment, *supra,* 45 Cin.L.Rev. at pp. 268-273; Levy, *supra.*)[15] However, whatever else may be said of them, the reasons advanced in support of the rule are significant in indicating that rule 2-111(A)(4) is not based on considerations of honesty, morality or potential misuse of confidential information or the existence of a conflict of interest in the usual sense (see Enker, *supra,* Am. Foundation Research J., at p. 465) as was the case in both *Greer* and *Younger.*[16] (See *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 916, fn. 4.) This is substantiated by the limited scope of rule 2-111(A)(4) and the express exceptions to it. As previously pointed out the fact that the attorney for a party is a material witness at trial does not require his withdrawal or that of his firm as trial counsel unless he was called to testify on behalf of his client; if called by the adversary party, withdrawal is not required unless his testimony is adverse to the client. (Rules 2-111(A)(4) and (5).) In addition, even if an attorney is a material witness on behalf of his client, withdrawal by him and his firm is not required if it "would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as

[15]Professor Enker has accurately described the situation: "Explanations have been extended by some, only to be refuted by others who offer their own rationales, which still others reject in turn." (Enker, *supra,* Am. Bar Foundation Research J., at p. 456.)

[16]In *People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, the California Supreme Court upheld what it characterized as an "unusual" order of the trial court recusing the entire prosecutorial office of the District Attorney of Contra Costa County as prosecutor in a murder case in circumstances also characterized by the court as "unusual." (19 Cal.3d at p. 259.) The circumstances were that the murder victim was the son of a discovery clerk in the district attorney's office and one of the defendants accused of the murder was the victim's former wife, the clerk's former daughter-in-law. In addition, the prosecution's theory involved proof of a protracted dispute between the victim and his former wife over the custody of their child. The district attorney's clerk had knowledge of the details of that controversy and was scheduled to be a material witness for the prosecution at trial. Moreover, a contested guardianship with respect to the clerk's grandchild was pending between the clerk and her former daughter-in-law. There was evidence that some information obtained in the guardianship proceeding was used by the police in their investigation of the murder, and it was quite likely that the criminal proceedings would affect the guardianship proceeding. The court expressed its holding as follows: "[A] trial judge may exercise his power to disqualify a district attorney from participating in the prosecution of a criminal charge when the judge determines that *the attorney suffers from a conflict of interest which might prejudice him against the accused and thereby affect, or appear to affect, his ability to impartially perform the discretionary functions of his office.*" (19 Cal.3d at p. 269, fn. omitted; italics added.)

*Greer* was followed in *Younger* v. *Superior Court, supra,* 77 Cal.App.3d 892, in which the court sustained an order recusing the entire prosecutorial office of the District Attorney of Los Angeles County as prosecutor in cases in which the defendants were being represented by the former law firm of a recently appointed high-ranking assistant district attorney. The court reasoned that, as in *Greer,* the situation in *Younger* could engender public suspicion concerning the impartiality of the public prosecutor by reason of an appearance of conflict of interest. (77 Cal.App.3d at p. 896.)

counsel in the particular case." (Rule 2-111(A)(4)(d); see text preceding fn. 7, *ante*.) If the rule were based on considerations of honesty, morality or potential misuse of confidential information or conflict of interest, hardship to the client would hardly be a sufficient basis for an exception. ■ Thus, rule 2-111(A)(4) is not a rule proscribing deceptive, dishonest, immoral or even unethical conduct in the true sense; it is, rather, a rule of professional propriety or etiquette resulting from the balancing of a number of competing interests[17] (see *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 915; Comment, *supra,* 45 Cin.L.Rev. at pp. 272-273; see also Sutton, *supra,* 41 Texas L.Rev. at p. 483 [text preceding fn. 23]).

Undoubtedly, the most prominent interests involved are the client's interest in competent representation by an attorney of his choice and the public interest in preserving trust and confidence in the administration of justice and the integrity of the bar. (See *Comden* v. *Superior Court, supra,* pp. 915 [majority opn.], 917 [dis. opn.]; Comment, *supra,* 45 Cin.L.Rev. at pp. 272-273.) Another interest involved is the interest of the affected attorney or law firm in continuing to represent the client. (See *Erwin M. Jennings Co.* v. *Di Genova, supra,* 141 A. at pp. 868-869; *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 919 [dis. opn.]; Comment, *supra,* 45 Cin.L.Rev. at pp. 272-273; see also Sutton, *supra,* 41 Texas L.Rev. at p. 483.) While the financial interest of the attorney or law firm has generally been emphasized, expecially in the earlier authorities (see *Erwin M. Jennings Co.* v. *Di Genova, supra,* 141 A. at pp. 868-869 and cases there discussed; Sutton, *supra*), there has been a growing recognition that the interest of the attorney or law firm in continuing the representation also implicates the attorney's right and duty to practice law in the most competent and efficient manner (see *Comden* v. *Superior Court, supra,* 20 Cal.3d at pp. 918-919 [dis. opn.]; Comment, *supra,* 45 Cin.L.Rev. at pp. 272-273; Levy, *supra,* 62 A.B.A. J. at pp. 225-226.) Other interests of the client are also involved: the interest in avoiding inconvenience and duplicative expense in replacing counsel already thoroughly familiar with the case (see, e.g., *Comden* v. *Superior Court, supra,* at pp. 914-915) and, perhaps, the client's interest in presenting his

---

[17]Perhaps this explains how a unanimous California Supreme Court could find, as it did in 1955, no impropriety in the prosecuting attorneys' testifying at trial on behalf of the People to extrajudicial statements made to them by the defendant. (See *People* v. *Burwell,* 44 Cal.2d 16, 38 [279 P.2d 744].) The California Rules of Professional Conduct then in effect apparently contained no express provision that an attorney-witness should not also act as trial counsel, but rule 1 did specifically commend to the members of the State Bar the Canons of Ethics of the American Bar Association, and canon 19 was then in effect and did so provide (see text, *ante*). Rule 2-111(A)(4) would, of course, result in a contrary finding today. (See *People* v. *Guerrero, supra,* 47 Cal.App.3d at pp. 445-449.)

case through witnesses not subject to impeachment for interest[18] (see, e.g., *Comden v. Superior Court, supra,* 20 Cal.3d at p. 912; ABA Code of Prof. Responsibility, EC 5-9 [see fn. 13, *ante*]; Sutton, *supra,* 41 Texas L.Rev. at pp. 482-483).

The balance drawn by rule 2-111(A)(4) is that in the absence of "substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case," the client's interests in being represented by the attorney of his choice and in avoiding inconvenience and duplicative expense and the attorney's or law firm's interest in continuing the representation must give way to the public interest in preserving trust and confidence in the administration of justice and the integrity of the bar and, to the extent it is a valid consideration (see fn. 18, *ante*), the client's interest in having his case presented through witnesses not subject to impeachment because of their interest in the case. (Rule 2-111(A)(4); see *Comden v. Superior Court, supra,* 20 Cal.3d at p. 915.)

The reasons advanced in support of rule 2-111(A)(4) and the authoritative discussions of the rule and its reasons previously cited (see text accompanying and following fn. 13, *ante*) reveal that the balance thus drawn is based on certain fundamental assumptions: that there are available a number of competent, qualified attorneys who are unrelated to the attorney-witness and who are willing to undertake the client's case (see, e.g., *Comden v. Superior Court, supra,* 20 Cal.3d at pp. 914-915; *U.S.* ex rel. *Sheldon El. Co.* v. *Blackhawk Htg. & Plmg., supra,* 423 F.Supp. at p. 490); that, consequently, the interest of the client in representation by the attorney of choice implicates primarily avoidance of inconvenience and duplicative expense (see *Comden v. Superior Court, supra*; *U.S.* ex rel. *Sheldon El. Co.* v. *Blackhawk Htg. & Plmg., supra*); that the attorney's interest in continuing to represent the client is mostly or wholly financial in nature (see *Erwin M. Jennings Co.* v. *Di Genova, supra,* 141 A. at pp. 868-869; Sutton, *supra,* 41 Texas L.Rev. at p. 483); that a trial advocate has or appears to have an interest in the outcome of the case, either financial as

---

[18]Professor Enker rather cogently observes: "[The ineffective witness argument] is hardly a persuasive argument on which to ground an ethical duty for the lawyer to withdraw from the case. It is at best a tactical consideration that counsel and client should weigh together to determine how serious the risks are in the given situation and whether they are outweighed by the advantages to the client of being represented in court by this particular lawyer. The argument fails to explain why the rule is not subject to exception with the client's consent as are the conflicts of interest forbidden in DR 5-101(A) and DR 5-105." (Enker, *supra,* Am. Bar Foundation Research J. at p. 457; see also *Comden v. Superior Court, supra,* 20 Cal.3d at p. 918 [dis. opn.].)

a result of his fee arrangement or expectation of representing the client in the future, or a partisan interest resulting from his zeal as an advocate (see *Erwin M. Jennings Co.* v. *Di Genova, supra,* 141 A. at p. 868; Sutton, *supra,* 41 Texas L.Rev. at p. 480); and that an attorney-witness whose law firm represents the client at trial will or will be presumed to continue to have an interest in the outcome of the case, either financial as a result of the fee arrangements and arrangement for his compensation by the firm, or secondarily perhaps, some residual partisanship resulting from his relationship with the law firm notwithstanding he is not acting as the advocate personally (see *Erwin M. Jennings Co.* v. *Di Genova, supra;* Sutton, *supra,* 41 Texas L.Rev. at p. 492.) ■ However valid these assumptions may be in the case of an attorney or law firm engaged in practice for remuneration and the normal attorney-client relationship, they have virtually no validity in the case of the multideputy prosecutorial office of a district attorney. The prosecutorial office of an elected district attorney and the relationship between the district attorney and his sole client, the People, are fundamentally and decisively different from a law firm and the ordinary attorney-client relationship.

The district attorney is the exclusive statutorily designated public prosecutor. (Gov. Code, § 26500.) His statutory duties include conducting on behalf of the People all prosecutions for public offenses. (Gov. Code, § 26500.) He is vested with important discretionary powers in relation to the prosecution of public offenses both before and after the jurisdiction of the court has been invoked. (See *People* v. *Superior Court (Greer), supra,* 19 Cal.3d at pp. 265-266.) Moreover, he is an elected county officer. (Gov. Code, § 24009.) He has been chosen by vote of the electorate as the person to be entrusted with the significant discretionary powers of the office of district attorney and he is accountable to the electorate at the ballot box for his performance in prosecuting crime within the county. Thus, the assumptions that there are available to the client a number of qualified advocates other than the attorney or firm to be replaced and that consequently the interest of the client is largely in avoiding inconvenience and duplicative expense are unsound as respects a district attorney. ■ It is true, of course, that if the district attorney and all his deputies are disqualified from prosecuting a case, the Attorney General may undertake the prosecution. (See Cal. Const., art. V, § 13; Gov. Code, §§ 12550, 12553; *People* v. *Superior Court (Greer), supra,* 19 Cal.3d at p. 270.) It is also no doubt true that the Attorney General is equally as competent as the district attorney as a prosecutor and it might be difficult to conclude that his substitution as prosecutor "would work a substantial hardship" on the People in the ordinary sense of those words. Neverthe-

less, when the entire prosecutorial office of the district attorney is recused and the Attorney General is required to undertake the prosecution or employ a special prosecutor, the district attorney is prevented from carrying out the statutory duties of his elected office and, perhaps even more significantly, the residents of the county are deprived of the services of their elected representative in the prosecution of crime in the county. The Attorney General is, of course, an elected state official, but unlike the district attorney, is not accountable at the ballot box exclusively to the electorate of the county. Manifestly, therefore, the entire prosecutorial office of the district attorney should not be recused in the absence of some substantial reason related to the proper administration of criminal justice.

The assumption that the advocate has either a financial or partisan interest in the outcome of the case has at most only partial application to the prosecutorial office of a district attorney. Neither the district attorney nor any of his deputies has any financial interest in the outcome of a criminal prosecution. Even in terms of partisan interest resulting from advocatory zeal, a district attorney is substantially different from other advocates whose duty is to represent the client zealously within the bounds of law (ABA Code of Prof. Responsibility, EC 7-1, EC 7-19). "The duty of the district attorney is not merely that of an advocate. His duty is not to obtain convictions, but to fully and fairly present to the court the evidence material to the charge upon which the defendant stands trial. . . ." (*In re Ferguson,* 5 Cal.3d 525, 531 [96 Cal.Rptr. 594, 487 P.2d 1234]; *People* v. *Ruthford,* 14 Cal.3d 399, 405 [121 Cal.Rptr. 261, 534 P.2d 1341].) "Nor is the role of the prosecutor . . . simply a specialized version of the duty of any attorney not to overstep the bounds of permissible advocacy. . . . In all his activities, his duties are conditioned by the fact that he 'is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . .' " (*People* v. *Superior Court (Greer), supra,* 19 Cal.3d at. p. 266, quoting *Berger* v. *United States,* 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629]; see also ABA Code of Prof. Responsibility, EC 7-13.[19])

---

[19]Ethical Consideration EC 7-13 reads in pertinent part: "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal

We do not mean to suggest that a deputy district attorney prosecuting a criminal proceeding is not intent on presenting the People's case in the most vigorous and effective manner possible, and it would be wholly unrealistic to expect him to do that without a measure of advocatory fervor. ■ Thus, as previously indicated, rule 2-111(A)(4) is fully applicable to deputy district attorneys and proscribes a single deputy's acting as both trial prosecutor and material trial witness on behalf of the prosecution. However, a deputy district attorney assigned to prosecute a case must temper his prosecutorial zeal in light of his special obligations as a representative of the government to see that justice is achieved. Thus, the assumption that an attorney-witness whose law firm is representing a client as advocate will continue to have some residual partisanship resulting from his relationship with his firm notwithstanding he is not personally acting as advocate is less valid in the case of the prosecutorial office of the district attorney than in the case of a law firm. Of course, since neither the office of the district attorney nor a deputy district attorney has any financial interest whatever in the outcome of the case, the assumption that an attorney-witness whose law firm represents the client at trial will or will be presumed to continue to have a financial interest in the outcome of the case has no validity at all where one deputy district attorney is the prosecutor and another is the witness.

What then is the situation in terms of the reasons for the rule when one deputy district attorney acts as prosecutor at trial and another is a material trial witness for the prosecution? As earlier indicated, those reasons for the rule based specifically on role conflict, one attorney acting as both advocate and witness, are inapplicable because the attorney-witness is not acting as advocate. The attorney-witness' objectivity cannot be beclouded by his zeal as an advocate, because he is not the advocate. Whether his objectivity may be or may be thought to be beclouded by the fact he is a deputy in the office of the district attorney we shall discuss in connection with the problem of interest or appearance of interest. The prosecuting deputy district attorney will have no unusual difficulty keeping separate in his mind the matters of which he has personal knowledge and the evidence in the case since it is not he who has the personal knowledge. The jury will have no unusual difficulty keeping properly segregated the arguments of the attorney acting as prosecutor and his testimony as a witness because the prosecutor and the witness are different persons. There will be no evidence from the prosecuting

---

justice the accused is to be given the benefit of all reasonable doubts. . . . Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecutor's case or aid the accused."

attorney which might be tantamount or taken by the jury as tantamount to an expression of his personal opinion as to the guilt or innocence of the defendant or the credibility of any witness. Similarly, there will be no occasion for the witness to argue his own credibility since he is not the prosecutor and will not argue the case. That one deputy district attorney may be required to argue the credibility of another we shall discuss in connection with the appearance of impropriety.

Similarly, whatever limitation defense counsel might otherwise feel in cross-examining and arguing the credibility of an attorney-witness because he is also acting as the prosecuting attorney is eliminated when the attorney-witness and the prosecuting attorney are not the same person. To the extent defense counsel might be inhibited in cross-examining or arguing the credibility of the attorney-witness because he is an attorney or because he is a deputy district attorney, such inhibition would in no way be diminished if the Attorney General were to assume prosecution of the case. The attorney-witness would still be an attorney and he would still be a deputy district attorney. We sincerely doubt, however, that defense counsel would be inhibited to any noticeable degree in cross-examining or attacking the credibility of a witness because he is a deputy district attorney or even the trial prosecutor. On the contrary, we suspect most defense counsel would undertake the task with relish.

We have already discussed the problem of interest and appearance of interest in this situation to some extent. As previously indicated the problem of primary concern, the actual or apparent financial interest of the attorney-witness in the outcome of the litigation, is simply nonexistent where one deputy district attorney is the prosecutor and another is the witness, because neither has any financial interest in the outcome of a criminal prosecution. The other basis of interest is the partisanship thought to be implicit in the role of trial advocate. We have already adverted to the attenuation of this problem resulting from the duty of district attorneys and their deputies to temper their prosecutorial zeal in light of their special obligation to seek justice for the accused as well as the government. Both the appearance and actuality of partisan interest are further diminished when the attorney-witness does not also act as prosecutor at trial, for the witness is not then also an advocate and may more easily maintain his objectivity. It has been persuasively argued that any residual interest or appearance of interest there may be on the part of the attorney-witness results not from the relationship between the attorney-witness and the advocate but from the former and perhaps

continuing relationship between the attorney-witness and the client, and that residual interest or appearance of interest will continue to exist regardless of the identity of the trial advocate. (See Enker, *supra,* Am. Bar Foundation Research J., at p. 457; Comment, *supra,* 45 Cin.L.Rev. at p. 270.) Similarly, in the case at bench, whatever partisan interest in the outcome of the trial Spivey might have or appear to have will be far more attributable to his background, training and experience in prosecuting crime and his connection with law enforcement than to the fact that a fellow deputy district attorney is prosecuting the case. Would he have any less interest in the outcome of the case if it were prosecuted by a deputy attorney general? Spivey's background, training and experience and any bias based thereon, apparent or real, will, of course, be the same whether the trial is prosecuted by another deputy district attorney or a deputy attorney general. Thus, to the extent Spivey's interest or apparent interest in the outcome of the case is a reality, it will not be cured by recusing the entire prosecutorial office of the district attorney and having the Attorney General assume the prosecution.

The ineffective witness argument is based on the theory that the real or apparent interest of the attorney witness will result in his testimony being given less weight than the testimony of a disinterested witness. However, as explained, where a deputy district attorney is the witness, the problem is somewhat less acute and, to the extent it exists, it will not be obviated by having the Attorney General take over the prosecution. Moreover, in respect to the testimony of the prosecutor in a criminal trial, the underlying premise may well be unsound. The cases indicate that the problem in criminal proceedings is not that the prosecutor-witness will be an ineffective witness but that his testimony will be accorded too much weight. (See *People* v. *Superior Court (Hollenbeck), supra,* 84 Cal.App.3d at p. 501 [148 Cal.Rptr. 704]; *Robinson* v. *United States* (8th Cir. 1929) 32 F.2d 505, 510 [opn. on rehg.]; *Shargaa* v. *State* (Fla. 1958) 102 So.2d 809, 813; *People* v. *Thomas* (1976) 38 Ill.App.3d 685 [348 N.E.2d 282, 284]; *People* v. *Cannon, supra,* 323 N.E.2d at pp. 851-852; *State* v. *Ryan* (1933) 137 Kan. 733 [22 P.2d 418, 420]; *State* v. *Hayes* (Mo. 1971) 473 S.W.2d 688, 691-692 [54 A.L.R.3d 93]; *Frank* v. *State* (1949) 150 Neb. 745 [35 N.W.2d 816, 821]; *Brown* v. *State* (Okla. Crim. App. 1973) 506 P.2d 1396, 1399; *Clark* v. *State* (Okla. Crim. App. 1962) 370 P.2d 46, 49; Annot., *supra,* 54 A.L.R.3d at pp. 105-106 [text foll. fn. 6].)[20] We hasten to point

[20]Indeed, at the hearing on August 31, 1977, Ms. Quinn, counsel for real party Rabaca, said to the court: "Your Honor, in my own mind's eye, as Mr. Spivey was testifying, I am thinking to myself, 'What an impressive witness he would make before the jury,' and that, I think, is essentially the problem. . . ."

out, however, that if that is the real concern, it will not be obviated by having the Attorney General assume the prosecution. Since Spivey will not be the prosecutor at trial, any undue weight accorded his testimony by the jury will not be because he is the prosecutor but because of his status as a deputy district attorney. (See Sutton, *supra,* 41 Texas L.Rev. at p. 480.) His well regarded status in the community will, of course, not be changed by having the Attorney General take over prosecution of the case.

■ We come then to the question of the appearance of impropriety. We do not believe a jury or the public would find any impropriety in Spivey's conduct in respect to Myers. They would undoubtedly think it perfectly proper and natural for a deputy district attorney to interview an important witness in a murder case to learn in detail the testimony he can be expected to give at trial and whether he can identify the persons he says were involved in the murder. And they would be correct. It is customary and, indeed, necessary to proper trial preparation that a prosecutor interview important prospective witnesses and, if one has made a photographic identification, to review with him or her any photographic display from which the identification was made. As Deputy Spivey indicated, it was somewhat· unusual for him to prepare the photographic displays and initially present them to Myers for viewing, but, as Spivey explained, the departure from usual procedure was occasioned by Myers' refusal to divulge his knowledge except in the presence of a. member of the district attorney's office. Spivey fully complied with the recommendation that a prosecutor not interview prospective witnesses except in the presence of one or more third persons. (ABA Project on Standards for Crim. Justice, Stds. Relating to the Prosecution Function (Approved Draft) §3.1(f).) Both interviews were conducted in the presence of third persons. Moreover, the first interview was tape recorded and, although the second was not, it lasted no more than two minutes.

Neither do we believe the jury or the public would find any impropriety in Spivey's testifying so long as he did not himself also act as prosecutor at trial. If they learned of his active participation in the pretrial photographic identifications, they would fully expect him, as any other witness with relevant information, to testify. Would they believe he might be inclined to lie or at least color his testimony favorably to the prosecution? In view of the numerous cases indicating that the problem involved when a prosecutor testifies at trial is that his testimony will be given undue weight by the jury, that prospect seems unlikely. In any

event, however, as previously explained, if the jury entertained any such thought it would be attributable not so much to the fact that a fellow deputy district attorney was the trial prosecutor, as to an assumed bias on the part of Spivey resulting from his background, training and experience as a deputy district attorney, a person connected with law enforcement. Those circumstances would not be changed by the Attorney General's taking over prosecution of the case.

Real parties' primary contention relating to impropriety or its appearance is that if the case is tried by a deputy district attorney and Spivey becomes a trial witness, Spivey's credibility will be in issue, and the prosecutor will be required to argue the credibility of his fellow district attorney. Just what it is that real parties find improper in that prospect is not specified. We perceive no impropriety, apparent or real. If Spivey were a district attorney's investigator rather than a trial deputy, there could be no claim of impropriety in the trial prosecutor's arguing his credibility, and no basis is apparent upon which right is changed to wrong by the fact that Spivey is a deputy district attorney. The prosecutor may be called upon to argue the credibility of any or all prosecution witnesses, and we fail to perceive why Spivey's credibility would present any special problem. Although it is urged that the credibility of the district attorney's office will be or appear to be on the line, no reason is suggested why that should be so because Spivey is a deputy district attorney any more than it would be if he were a district attorney's investigator. Neither a prosecutor nor any other advocate vouches for the credibility of the witnesses he presents and, indeed, as mentioned earlier, may not ethically do so. From the standpoint of appearances, we do not believe either the jury or the general public would think it any more improper for the trial prosecutor to argue the credibility of another deputy district attorney than that of an investigator employed in the district attorney's office. Nor do we believe they would perceive any substantial distinction between another district attorney's arguing Spivey's credibility and a deputy attorney general's doing the same thing.

There appears to be implicit in real parties' argument on this point an assumption that Spivey and the trial prosecutor will be close associates or friends. Whether that would warrant recusal of the deputy assigned to try the case we have no occasion to decide. There is no evidence that there is no deputy district attorney available and able to try the case who is not a close associate or good friend of Spivey. In the prosecutorial office of the District Attorney of San Bernardino County there are beside the district attorney himself some 94 deputy and assistant district attorneys assigned

to three permanent offices. The San Bernardino office is approximately 30 miles from the Ontario office and the Victorville office is some 65 miles distant from the Ontario office.

Additionally, real parties greatly exaggerate the problem of Spivey's credibility and the significance of Myers' pretrial photographic identifications. If in fact Spivey testifies at trial, his credibility will be an issue the same as any other witness.' However, he was not an eyewitness to the crime. His testimony will relate only to the pretrial photographic identification procedures and Myers' photographic identifications of defendants. Most of his testimony will probably be given in foundational hearings outside the presence of the jury. (See fn. 8, *ante.*) The photographic displays from which Myers identified defendants are available to be introduced into evidence. Both interviews with Myers were witnessed by other persons who could be called to testify if necessary. The first interview in which Myers' full statement was taken was tape recorded, and the tape is available to be introduced into evidence. Significantly, this is not a case in which a witness to crime has gotten a fleeting glimpse of the perpetrator, otherwise unknown to him, in a dimly lit place. According to Myers' statement the defendants were all housed in the same unit as he and he had seen them on prior occasions. Indeed, he says he was asked to participate in the murder. In addition, there is apparently another witness, Spinelli, who has identified Rabaca and French.

We conclude, therefore, that that part of rule 2-111(A)(4) requiring withdrawal of an entire law firm when a member of the firm ought to testify on behalf of the client is inapplicable to a multideputy prosecutorial office of a district attorney and that the circumstances in the case at bench, which at most disclose that one deputy district attorney ought to be called as a witness on behalf of the prosecution at trial,[21] do not reasonably require recusal of the entire prosecutorial office of the District Attorney of San Bernardino County to insure the integrity of the

[21]We note there is virtually no evidence and the court did not find that Chief Deputy Canty ought to be called as a prosecution witness at trial. Moreover, aside from his title and the fact he is in charge of the Ontario office, there is no evidence of Canty's position in the structure of the district attorney's organization or his authority and responsibilities with respect to the other 93 deputy and assistant district attorneys in the organization (cf. *Younger* v. *Superior Court, supra,* 77 Cal.App.3d at pp. 896-897). Several decisions suggest it is improper to permit an assistant prosecutor to try a case in which his supervising superior is to be an important trial witness for the prosecution. (See *People* v. *Schraeberg* (1932) 347 Ill. 392 [179 N.E. 829, 830]; *United States* v. *Alu* (2d Cir. 1957) 246 F.2d 29, 33; cf. *State* v. *Griffith* (1971) 94 Idaho 76 [481 P.2d 34, 41].) That question is not presented by the circumstances shown in the case at bench.

fact-finding process, the fairness or appearance of fairness at trial, the orderly or efficient administration of justice or public trust and confidence in the criminal justice system. We further conclude *People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, and *Younger* v. *Superior Court, supra,* 77 Cal.App.3d 892, are fundamentally distinguishable from the case at bench because this case, unlike those, does not involve a conflict of interest or the appearance of a conflict of interest which might prejudice the prosecutorial office of the district attorney against the accused and affect or appear to affect the ability of the district attorney and his prosecutorial staff to perform impartially the discretionary functions of their office. (See fn. 16, *ante.*) Similarly, *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, is distinguished from the case at bench by the inapplicability of that part of rule 2-111(A)(4) pertaining to a law firm and by the fundamental differences between the prosecutorial office of a district attorney and its relationship with its sole client, the People, and a law firm and its relationship with one of its clients.

Although they do not contain much, if any, discussion of the problem, numerous decisions in jurisdictions throughout the United States indicate expressly or by necessary implication that the fact that one deputy in a prosecutorial office ought to testify as a material trial witness for the prosecution does not without more disqualify all other deputies in the prosecutorial office from acting as trial prosecutor. (See *Robinson* v. *United States, supra,* 32 F.2d at p. 510; *United States* v. *Callanan* (4th Cir. 1971) 450 F.2d 145, 150; *United States* v. *Cerone* (7th Cir. 1971) 452 F.2d 274, 288; *People* v. *Mann* (1963) 27 Ill.2d 135 [188 N.E.2d 665, 667]; *People* v. *Spencer* (1973) 182 Colo. 189 [512 P.2d 260, 263]; *Tomlin* v. *State* (1965) 81 Nev. 620 [407 P.2d 1020, 1022]; *State* v. *Fackrell* (1954) 44 Wn.2d 874 [271 P.2d 679, 680]; *Lukas* v. *State* (1927) 194 Wis. 387 [216 N.W. 483, 484-485]; see Annot., *supra,* 54 A.L.R.3d at p. 109, fn. 36.)[22]

---

[22]The suggestion to the contrary by Professor Sutton in his 1963 law review article is neither persuasive nor supported by the authorities cited. The language reads: "Sometimes a prosecuting official makes a practice of interviewing incarcerated defendants and taking written confessions from them. Upon trial, the prosecutor takes the stand to vouch for the voluntary nature of the confession. He either serves also as advocate or, substantially the same thing, leaves the actual trial to a close associate such as a fellow lawyer in the same prosecutor's office. Of course, such activity is condemned." (Sutton, *supra,* 41 Texas L.Rev. at p. 490, fns. omitted.) No analysis or reasoning supports the stated conclusion that trial prosecution by the attorney-witness is substantially the same thing as trial prosecution by another attorney in the prosecutorial office and, as analysis demonstrates, that assumption is unsound. Cited in support of the statement that "such activity is condemned" are *United States* v. *Alu, supra,* 246 F.2d 29, *State* v. *Ryan, supra,* 22 P.2d 418, *Bennett* v. *Commonwealth* (1930) 234 Ky. 333 [28 S.W.2d 24]; *State* v. *Lee* (1943) 203 S.C. 536 [28 S.E.2d 402, 149 A.L.R. 1300]; *Zeidler* v. *State* (1926) 189 Wis. 44 [206 N.W. 872]. The only one of these decisions touching the point is *United States* v. *Alu,*

Since the record furnishes no basis for it, the order recusing the entire prosecutorial office of the District Attorney of San Bernardino County must be vacated. That will render the order requiring the Attorney General to assume prosecution in the case unnecessary and unwarranted. It, too, must, therefore, be vacated, and it is unnecessary for us to determine whether the trial court would have been legally authorized to make such an order had its order recusing the district attorney been proper.

Let a peremptory writ of mandate issue to the Superior Court of San Bernardino County commanding it to vacate its orders recusing the prosecutorial office of the District Attorney of San Bernardino County and commanding the California Attorney General to assume prosecution in case No. CRW-5209 entitled "People v. John Manuel Rabaca, Leroy French and Ernest Ronald Roybal."

Gardner, P. J., concurred.

**GARDNER, P. J.**—I concur:

Under the facts of this case, the order recusing the entire district attorney's office was clearly an abuse of discretion. I can add nothing to Justice Kaufman's analysis of the legal issues involved. However, I do have some purely pragmatic observations to make.

The ever expanding list of pretrial motions in criminal cases is becoming something of a judicial scandal. The order made in this case, if upheld, will simply add one more arrow for the bows of defense attorneys and the air is already full of such arrows. The citizens of Orange County were recently exposed to the spectacle of almost a solid year of pretrial motions on the part of a well-heeled criminal defendant—after which he

---

*supra,* in which the court, in dicta, disapproved of an assistant United States attorney who was the Chief of the Criminal Division for the Eastern District of New York and the immediate superior of the trial prosecutor, taking the stand and giving significant testimony on behalf of the prosecution. (246 F.2d at pp. 33-34.) As indicated, there was a good deal more involved than prosecution by one attorney in the prosecutorial office and material testimony by another. The witness was the immediate superior of the trial prosecutor (see fn. 21, *ante*). At one point during the trial he even participated in the presentation of the government's case, and, as the court pointed out, there was no necessity whatever for him to testify inasmuch as there were available several other lay witnesses who could have testified to the same matter. (246 F.2d at pp. 33-34.) In none of the other cases cited did the facts involve or the court discuss the problem of trial prosecution by one attorney in the prosecutorial office and material testimony by another.

promptly pled guilty. Sometime ago, I wrote an opinion (*People* v. *Huffman,* 71 Cal.App.3d 63 [139 Cal.Rptr. 264]) in which the defendant had complained that his attorney had not made enough "motions." Just off the top of my head, I made up a list of all of the motions I could think of. That list came to 17 motions. I was a piker. I recently saw an ad for a lecture course entitled "Motions in Criminal Practice" which listed 36 such motions and I note that list omits 7 which appeared on my list. If the order of the trial court were allowed to stand, we would be adding *Rabaca* to such well known household names as *Eleazer, Beagle, Aranda, Ballard, Hitch, Murgia, Johnson, Rost* and *Kellett.*

The district attorney has the peculiar opportunity to put himself in a position in which, under *Comden* v. *Superior Court,* 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971], he "ought" to be called as a witness.[1] Quite often a deputy district attorney will—quite properly—take a confession from a defendant or a statement from a witness who later becomes hostile. This puts that deputy in a position in which—quite properly—*he* should be recused. But not the whole office!

The dissent appears to bottom its case on the concept of the avoidance of the appearance of evil. It's a little hard to argue against that concept. It has a rich ring to it. It's in the same category as motherhood and apple pie. Nevertheless, such a concept should not be elevated into a mindless code of rigid etiquette or a frozen formalism, devoid of substance. I fear that if the order of the trial court were upheld, it will add to the public's concept that we have developed a judicial world of needless refinements and distinctions in which signs and symbols are all important. When balancing the possibility of the appearance of evil against the probability of serious damage to the judicial system, commonsense, reason and experience tell me that the position taken by the dissent is simply wrong.

I concur in the judgment reversing the trial court.

**TAMURA, J.**—I respectfully dissent.

The majority holds that rule 2-111(A)(4) of the Rules of Professional Conduct of the State Bar (hereafter rule 2-111(A)(4)) as interpreted by

---

[1]Although I must say that I thought the dissent had much the better part of the argument in *Comden.*

our high court in *Comden* v. *Superior Court,* 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971], does not apply to the district attorney's office in the circumstances here presented. This holding means there would be no impropriety in a district attorney's office trying a criminal case in which one of its deputies will be a witness for the People on a crucial issue although in a like context in civil litigation a private law firm would be required to withdraw from the case. I cannot subscribe to the double standard countenanced by the majority nor am I persuaded by their efforts to justify it.

In my opinion the trial judge did not abuse his discretion in making the implied determination that Deputy District Attorney Spivey was a witness who ought to testify for the People at the trial and in recusing the district attorney's office from conducting the prosecution of the case on that ground.

I

Although *Comden* involved private attorneys and civil litigation, in my view its teachings apply with equal, if not greater, force to prosecutors in criminal proceedings. The district attorney and his deputies, like all attorneys, are accountable under the Rules of Professional Conduct of the State Bar. (Rule 1-100, Rules of Prof. Conduct.[1] See *People* v. *Superior Court (Greer),* 19 Cal.3d 255, 261 [137 Cal.Rptr. 476, 561 P.2d 1164]; *People* v. *Guerrero,* 47 Cal.App.3d 441, 448 [120 Cal.Rptr. 732].) "The prosecutor is a public official vested with considerable discretionary power to decide what crimes are to be charged and how they are to be prosecuted. [Citations.] In all his activities, his duties are conditioned by the fact that he 'is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is

[1] Rule 1-100 of the Rules of Professional Conduct of the State Bar provides: "These rules of professional conduct, adopted by the Board of Governors of the State Bar of California, pursuant to the provisions of the State Bar Act, shall become effective upon approval by the Supreme Court of California. When so approved, these rules shall be binding upon all members of the State Bar, and the wilful breach of any of these rules shall be punishable as provided by law. Nothing in these rules is intended *to limit or supersede any provision of law relating to the duties and obligations of attorneys or the consequences of a violation thereof.* The prohibition of certain conduct in these rules is not to be interpreted as an approval of conduct not specifically mentioned. These rules may be cited and referred to as 'Rules of Professional Conduct of the State Bar of California.' ■ Wherever in these rules reference is made to a law firm or association, such reference shall also apply to a law corporation." (Italics supplied.)

Neither the Attorney General nor the district attorney contends that application of rule 2-111(A)(4) of the Rules of Professional Conduct would conflict with "any provision of law" relating to their respective duties and obligations.

as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.' " (*People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, 266, quoting *Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629].) "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the *appearance* of impropriety." (*People* v. *Rhoades,* 12 Cal.3d 180, 185 [81 Cal.Rptr. 701], fn. omitted, original italics; *People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, 268.)

The standard of professional conduct of a public prosecutor must, therefore, certainly be no less than that expected of private attorneys in civil litigation. A judicial pronouncement that a public prosecutor's office conducting a criminal prosecution need not observe the same professional standard governing private attorneys in the conduct of civil litigation does not inspire public confidence in the integrity of our criminal justice system.

The *Comden* court explains that the two basic purposes to be served by rule 2-111(A)(4) are to safeguard the client's interest by minimizing the danger of impeachment of the lawyer-witness for his interest in the litigation and to avoid the appearance of impropriety. I agree that in a criminal prosecution the credibility basis for applying rule 2-111(A)(4) is not as weighty as it is in private civil litigation; the danger in a criminal proceeding is, as the majority correctly points out, not that the jury will doubt the prosecutor-witness' credibility, but that it will give his testimony undue weight. The first of the stated objectives of the rule therefore does not have the same relevance to a public prosecutor's office as it does to a private law firm in civil litigation. However, attainment of the second objective, avoidance of an appearance of impropriety which has been termed "at once the most potent and most common reason judicially advanced" for the rule (6 Wigmore, Evidence (Chadbourn rev. ed. 1976) § 1911, pp. 775-776), is the paramount purpose served by the application of rule 2-111(A)(4) to the office of public prosecutor.

The appearance of impropriety sought to be avoided by rule 2-111(A)(4) is that of overzealousness on the part of the lawyer-witness and the law firm of which he is a member. In civil litigation, an appearance of

excessive zeal diminishes public respect for the profession. In a criminal prosecution, the appearance of excessive zeal on the part of a public prosecutor's office is more than a matter of concern to the legal profession; it is a matter of public concern because it reflects upon the integrity and impartiality of our system of criminal justice. The "role of the prosecutor" is not "simply a specialized version of the duty of an attorney not to overstep the bounds of permissible advocacy." (*People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, 266.) Standard 3.1 of the American Bar Association Standards relating to The Prosecution Function stresses the importance of a prosecutor's avoiding placing himself in a situation that will require him to become a material witness for the People in the prosecution of a case. The commentary to standard 3.1 reads in pertinent part: "One of the chief advantages urged in behalf of the separation of barristers and solicitors in the English legal profession is the general rule of avoidance of pretrial contact with witnesses by the advocate. This permits the advocate to maintain the stance in court of one who has not confronted the witness before, except in some situations where he may be present while the solicitor interviews the witness. . . . [¶] The Code of Professional Responsibility takes a firm position that a lawyer should avoid testifying in court when he is the advocate. ABA CODE DR 5-102. 'Although his zeal as a lawyer might not influence his testimony as a witness, an ever critical public is only too apt to place such a construction upon it. A lawyer should avoid not only all improper relationships but should likewise, in order to maintain the profession in public confidence and esteem, avoid all relationships which may appear to be improper.' ABA COMM. ON PROFESSIONAL ETHICS, OPINIONS, No. 50 (1931) (hereinafter cited ABA OPINIONS). See also Jackson v. United States, 297 F.2d 195, 196 (D.C. Cir. 1961)." (ABA Project on Standards for Crim. Justice, Stds. Relating to the Prosecution Function (1971) std. 3.1, pp. 79, 80.)

The majority refers to the vast and important discretionary powers vested in the district attorney as a reason for declining to apply the *Comden* holding to that office. Rather than being a reason for exempting the district attorney's office from rule 2-111(A)(4), the fact that extensive discretionary powers are reposed in that office is precisely why the rule should apply to it so as to avoid any suspicion that those vast powers are not being exercised impartially and objectively.[2] As our high court said in

---

[2] The majority suggests that the portion of rule 2-111(A)(4) pertaining to continued representation of a client by the law firm of the lawyer who ought to testify was intended to apply only to private law firms and not to a public law office. However, the majority holds that Mr. Spivey violated the very same subdivision of rule 2-111(A)(4) at the pretrial proceedings when he testified as a witness and resumed his role as an advocate

*People* v. *Superior Court (Greer)*, 19 Cal.3d 255, at pages 266-267 [137 Cal.Rptr. 476, 561 P.2d 1164]: "Thus not only is a judicial requirement of prosecutorial impartiality reconcilable with executive discretion in criminal cases, it is precisely because the prosecutor enjoys such broad discretion that the public he serves and those he accuses may justifiably demand that he perform his functions with the highest degree of integrity and impartiality, and with the appearance thereof." (Fn. omitted.)

I would, therefore, hold that rule 2-111(A)(4) and *Comden* apply to a district attorney's office.

## II

I also disagree with the majority's holding that the trial judge incorrectly assumed that rule 2-111(A)(4) would come into play if there was a likelihood that Mr. Spivey would be called *either* by the prosecution or the defense.

Although the judge did not make an express finding that Mr. Spivey ought to be called as a witness on behalf of the People, his comments indicate that his concern was that Mr. Spivey ought and in all likelihood would be required to testify for the People. The judge portrayed Mr. Spivey as "an essential witness in a very crucial issue of the case" and pointed out the ethical problem this posed should the district attorney's office try the case. I find nothing in the judge's comments affirmatively showing that he applied an incorrect standard in determining that Mr. Spivey ought to be a witness. In the absence of such showing, it must be presumed that the judge applied the law correctly and all necessary findings to support his order should be implied. Thus, as I view this proceeding, the question whether the record supports the implied finding that Mr. Spivey ought to be called as a witness on behalf of the People is an issue that cannot be avoided. In my opinion the record amply supports the implied finding of the trial judge.

"Whether an attorney ought to testify ordinarily is a discretionary determination based on the court's considered evaluation of all pertinent factors including, inter alia, the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence

thereafter in those proceedings. In other words, according to the majority, subdivision 4 is somehow partly, but not entirely, applicable to public law offices. I have difficulty in following that split interpretation of the rule.

by which these matters may be independently established. (See *Miller Elec. Const., Inc.* v. *Devine Lighting Co., Inc.* (W.D. Pa. 1976) 421 F.Supp. 1020, 1021, fn. 2.)" (*Comden* v. *Superior Court, supra,* 20 Cal.3d 906, 913.) Here, there was no abuse of discretion in the judge's implied determination that Mr. Spivey ought to testify for the People at trial. As the judge observed, Mr. Spivey was an "essential witness" on a "crucial issue." Manifestly the issue the judge had in mind was whether the pretrial photographic identification procedure employed by Mr. Spivey was impermissibly suggestive and would taint Myers' in-court identification testimony.

Petitioners contend, however, that Mr. Spivey is not one who "ought to testify" because it is not the People's intention to present evidence of the pretrial photographic identification as part of its case in chief. That assumption is not dispositive. The test is whether the People ought to call Mr. Spivey as a prosecution witness at some point during the trial. (*J. P. Foley & Co., Inc.* v. *Vanderbilt* (2d Cir. 1975) 523 F.2d 1357; *U. S.* ex rel. *Sheldon El. Co.* v. *Blackhawk Htg. & Plmg.* (S.D.N.Y. 1976) 423 F.Supp. 486.) The trial judge could have reasonably anticipated that at trial the defense would object to the admission of Myers' in-court identification testimony on the ground it was tainted by an impermissibly suggestive pretrial photographic lineup. In that event, Mr. Spivey ought to testify for the People at the admissibility hearing to demonstrate the fairness of the identification procedure he employed. In the event the judge should find that the pretrial identification procedure was fair, the defense may nevertheless attempt to show before the jury the unfairness of the procedures. (*People* v. *Blum,* 35 Cal.App.3d 515, 519 [110 Cal.Rptr. 833]; *People* v. *Rodriguez,* 10 Cal.App.3d 18, 31 [88 Cal.Rptr. 789]; *People* v. *Neal,* 271 Cal.App.2d 826, 832 [77 Cal.Rptr. 65].) Should that occur, it would be reasonable to say that Mr. Spivey ought to testify for the People in rebuttal to counteract the claimed unfairness of the pretrial identification procedures.

Petitioners contend that Mr. Spivey need not testify for the People at the trial because he was not the only one who heard the statements made by Myers during the two preindictment interviews and, further, that a tape recording is available relative to the first interview. The presence of others at the two interviews and the availability of the tape recording do not perforce obviate the necessity of Mr. Spivey's testimony at trial.

In *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, a member of the law firm retained as plaintiff's trial counsel heard statements which

would sustain plaintiff's claim for relief. The court held that the fact that others also heard the statements did not compel the court to deny the motion to disqualify; the court stated: "While others present at the meeting also reported hearing the statements described by Greene [the attorney], it cannot be said that under the facts the trial court could *only* have concluded Green's testimony would not be necessary at trial, . . ." (*Id.,* at p. 913, original italics.) In the same vein, it cannot be said on the record before us that the trial judge could only have concluded that Mr. Spivey's testimony would not be necessary because other persons were present at the two interviews with Myers. Mr. Spivey was the one who prepared and conducted the photographic lineup. Neither the tape of the first interview nor recounting by others of the statements made at the two interviews would reveal how Spivey prepared and conducted the lineups.

Predicated solely upon the availability of a tape recording of the first interview, the Attorney General contends that exception (b) of 2-111(A)(4) is apposite, the theory apparently being that Mr. Spivey would merely give foundational testimony that the tape recording is an accurate representation of what was said at the interview.[3] The contention overlooks the fact that the second interview with Myers was not recorded and furthermore, as I have explained, the tape recording would not reflect the photographic identification technique used by Mr. Spivey. In other words, Mr. Spivey's testimony will relate not only to what was said, but to what was done during the interviews. His testimony can in no sense be deemed mere "formality."

Neither the Attorney General nor the district attorney seeks to invoke exception (d) of the rule which permits the attorney or the law firm to conduct the trial if disqualification would "work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." Although not articulated in terms of exception (d), in *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, the applicability of the principles underlying that exception appears to have been the focal point of the disagreement between the majority and the dissent. The dissent was of the view that since *Comden* involved a nonjury equity proceeding, failure of the law firm to withdraw would not undermine the purposes of rule 2-111(A)(4) whereas disqualification of the firm would unreasonably interfere with the client's right to be represented by counsel of her choice and work a substantial injustice upon her. Here, petitioners make no claim that recusal would work a

---

[3]Obviously exceptions (a) and (c) are not pertinent to the facts of this case.

substantial hardship on the People. Furthermore, unlike *Comden,* we are here concerned with a criminal prosecution involving a right to jury trial.

Petitioners express concern that if the recusal order is upheld it might invite attempts to recuse a district attorney whenever a trial deputy has interviewed prospective witnesses in the normal course of trial preparation because the deputy may give impeaching testimony at trial in the event the witness changes his story or recants on the witness stand. The fear is groundless. Disqualification of the district attorney simply because a trial deputy interviewed prospective witnesses in the normal preparation for trial would be contrary to both the letter and spirit of rule 2-111(A)(4). The rule requires withdrawal of an attorney "when he knows or should know" that he or a lawyer in his firm ought to be called as a witness on behalf of his client. Since it would be purely speculative whether a deputy district attorney who has interviewed witnesses in preparation for trial would be required to give impeaching testimony, it would be an abuse of discretion to say in such circumstances that the district attorney "knows or should know" that the deputy "ought" to be called as a witness on behalf of the People at trial. Furthermore, application of rule 2-111(A)(4) to disqualify an entire law firm simply because trial counsel interviewed prospective witnesses in preparation for trial would conflict with an attorney's duty to his client. A trial lawyer who does not interview key prospective witnesses before trial could be remiss in the performance of his professional obligations to "faithfully discharge the duties of an attorney at law to the best of his knowledge and ability."[4] (Bus. & Prof. Code, § 6067 [oath of an attorney].) If rule 2-111(A)(4) could be invoked in the situation described, the only lawyer who would not be disqualified from trying the case would be a slipshod practitioner who failed to properly prepare for trial. The rule does not contemplate such an absurd result.

The present case does not involve the normal pretrial interview of prospective witnesses by a trial lawyer. Deputy District Attorney Spivey was involved in an important aspect of the criminal investigative process normally conducted by the police or other investigative authorities. The

---

[4]Standard 3.1, American Bar Association Project on Standards for Criminal Justice (1971) Standards Relating to The Prosecution Function recommends that witness interviews be conducted in the presence of a third person who could be used as an impeaching witness should this become necessary. Subdivision (f) of the standard provides: "(f) The prosecutor should avoid interviewing a prospective witness except in the presence of a third person unless the prosecutor is prepared to forego impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present his impeaching testimony."

problem arises, not because there was any impropriety in the deputy's participation in the investigation, but because he ought to testify for the People at trial concerning the investigation.

For the foregoing reasons, I would hold that the trial judge did not abuse his discretion in recusing the district attorney. I would modify the order below by striking therefrom that portion which directs the Attorney General to prosecute the criminal charges[5] and as so modified would deny the peremptory writ and discharge the order to show cause.

The petition of the real parties in interest for a hearing by the Supreme Court was denied January 24, 1979.

---

[5]The Attorney General contends that the trial court exceeded its jurisdiction when it directed his office to conduct the prosecution of the charged offenses. I agree. Neither section 12550 nor section 12553 of the Government Code authorizes a trial court to direct the Attorney General to assume the conduct of a criminal prosecution when a disability prevents the district attorney from permanent participation in the case. Rather, upon disqualification of the district attorney, Government Code sections 12550 and 12553 commit to the discretion of the Attorney General the decision whether to assume the prosecution of the case, including whether to appoint special counsel to prosecute the matter. (*Toland* v. *Ventura,* 135 Cal. 412, 414-415 [67 P. 498].) *Toland* v. *Ventura, supra,* is illustrative. There, the district attorney was disqualified from conducting the criminal prosecution because of the existence of a prior attorney-client relationship between him and the accused. (*Id.,* at p. 413.) The court held that when the district attorney is disqualified from prosecution of a criminal case, "the duty of seeing that there is a proper prosecution seems to devolve on the attorney-general; and if the court has any duty in the premises it is to inform the attorney-general of the condition." (*Id.,* at pp. 414-415.)